WALTZER, Judge.
Plaintiff Patricia Reeb appeals a trial court judgment granting a motion for summary judgment in favor of Dr. Timothy Kern. We reverse.
PROCEDURAL BACKGROUND FACTS
Mrs. Reeb filed a petition for damages against Dr. Timothy J. Kern, Dr. James Shoemaker and Kern Accident and Injury Clinic, a professional corporation. The petition alleged that she was injured due to negligent treatment she received from the defendants, in the following non-exclusive particulars:
1. Failing to properly diagnose petitioner’s injuries before administering treatment;
2. Causing damages and disabling injuries to petitioner’s spine and back;
3. Treating a patient for injuries which were out of their realm of expertise;
4. Failing to recommend petitioner to a physician of competent medical expertise and background to determine petitioner’s injuries;
5. And and all other acts of negligence which may be brought out at the trial of the merits hereof.
Defendant-appellee Dr. Kern filed a motion for summary judgment on December 3, 1990, accompanied by a memorandum and depositions, asserting that Mrs. Reeb had declared under oath that she received treatment only by Dr. James Shoemaker and an unknown intern chiropractor during her initial examination. Since Mrs. Reeb admitted under oath that she had never been treated or seen by Dr. Kern, counsel argued that Dr. Kern could not be liable as her treating physician. In a supplemental memorandum, counsel for Dr. Kern asserted that La.R.S. 12:1057(B) precluded any finding of liability of Dr. Kern, especially so since he had not ever treated Mrs. Reeb. Appellant countered with a memorandum alleging that La.R.S. 12:1057(B) was inapplicable to the case at bar, but rather that the primary issue was whether or not Dr. Kern owed a duty of care to Mrs. Reeb. On July 16, 1991, the trial judge found that there are no genuine issues of material fact and that it was “categorically impossible for the defendant to have perpetrated an act of negligence in his treatment” because the defendant never actually treated Mrs. Reeb. Citing La.R.S. 12:1057(C), he found that the statute would reference only to the “attending chiropractor ” Dr. Shoemaker, but not a co-worker, incorporator, subscriber, shareholder, director, officer or agent of the corporation, specifically, Dr. Kern. The trial court granted summary judgment as a matter of law.
APPLICABILITY OF THE STATUTE
LA.R.S. 12:1057 PROVIDES:
“A. A subscriber to, or holder of, shares of a professional chiropractic corporation shall be under no liability to the corporation with respect to such shares, other than the obligation of complying with the terms of the subscription therefor, and said obligation shall continue *904 whether or not his rights or shares have been assigned or transferred.
B. A shareholder shall not be personally liable for any debt or liability of the corporation.
C. Nothing in this Chapter shall be construed as in derogation of any rights which any person may by law have against an incorporator, subscriber, shareholder, director, officer or agent of the corporation, because of any fraud practiced upon him, or because of any breach of professional duty or other negligent or wrongful act, by such person, or in derogation of any right which the corporation may have against any of such persons because of any fraud practiced upon it by him.”
A careful reading of the statute reveals that paragraphs (A) and (B) limit the liability of corporate shareholders to the extent that only limited corporate funds may be recovered if and when a debt is owed on a corporate liability. Shareholders and subscribers may not be held personally liable; for example, a judgment against the corporation may not be enforced against a shareholder’s private property or bank account. Paragraph (C) of the statute specifically states that paragraphs (A) and (B) shall not “be construed as in derogation of any rights which any person may by law have against an incorporator, subscriber, shareholder, director, officer or agent of the corporation, ... because of any breach of professional duty or other negligent or wrongful act, by such person ...” (emphasis supplied). This section specifically gives a right to sue for an alleged breach of a professional duty by Dr. Kern.
The trial court confused the protection afforded to shareholders through limited liability provided in the statute with the liability that may be established against an incorporator, subscriber, shareholder, director, officer or agent of the corporation because of any breach of professional duty or other negligent or wrongful act under La.C.C. Art. 2315 and La.CC. Art. 2316, 2317 et seq. Dr. Kern was not entitled to the grant of summary judgment as a matter of law.
GENUINE ISSUES AS TO MATERIAL PACT
Aside from the misinterpretation of the law, the trial judge erred when he ruled summary judgment appropriate because he saw no genuine issue as to a material fact to warrant a trial on the merits.
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Bd. of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue of material fact, and the mover is entitled to a judgment as a matter of law. La.C.C.P. Art. 966; Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Mrs. Reeb’s properly filed allegations must be taken as true and must receive the benefit of the doubt when her assertions conflict with those of the movant. The papers supporting mover’s position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the mover has satisfied his burden. Any doubt must be resolved against summary judgment and in favor of a trial on the merits. Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Company, 427 So.2d 1152 (La.1983); Morcos v. EMS, Inc., 570 So.2d 69 (La.App. 4th Cir.1990). The court may not grant the motion because the opponent seems to have little chance to succeed at trial. Morcos, supra, at 76.
The record is replete with materials which, if taken as true, deserve to be explored and examined at a trial on the merits. Discovery disclosed that Mrs. Reeb was initially examined by someone whose name and professional designation and *905 qualifications are unknown. The record contains an insurance form dated February 15, 1988, where Mrs. Reeb assigned insurance proceeds to Dr. Timothy J. Kern. Discovery also produced a cash receipt to Mrs. Reeb from Dr. Timothy Kern. The record shows further that Dr. Timothy Kern was released from liability, when X-rays were furnished to Mrs. Reeb’s husband. Copies of advertisements made part of the record contain the headline “KERN CHIROPRACTIC TEAM,” complete with a picture of Dr. Shoemaker and an assistant, touting the availability of a “detailed orthopedic and neurological exam.[1] Answers to interrogatories reveal that Kern Accident and Injury Chiropractic Clinic was incorporated October 1, 1985 by Timothy J. Kern, D.C. In February and March 1988, the owners of the Kern Accident Clinic were Timothy Kern, D.C. and James Shoemaker, D.C. Dr. Kern was the president and secretary, while Dr. Shoemaker was director of clinical operations. Further, the record reveals that an “Associate Doctor Agreement” was confected with Dr. James Shoemaker on January 19, 1987.[2] Additionally, the agreement provides in paragraph 9 that: "... Corporation has and will spend substantial time, efforts and funds in the training of Associate in order to enhance Associate’s skills and value to Corporation.”
A trial on the merits will show whether Dr. Kern or anyone else set up standards of operations for the Kern Clinic, and whether those standards were followed. Vicarious liability of Dr. Kern may be determined, if any. A trial may further show whether the “intern chiropractor” who treated Mrs. Reeb when she initially appeared in the clinic, was in fact a professional chiropractor capable of discussing with a patient whether “chiropractic is the answer” (see Associate Agreement, n. 2) and who gave or should have given those instructions.
Although it is clear that Dr. Kern did not personally treat Mrs. Reeb, inaction or non-participation of Dr. Kern in the treatment of Mrs. Reeb may give rise to a finding that he was negligent and failed in his duty to the clinic’s patient. Exploration is needed to determine whether the “detailed orthopedic and neurological exam,” touted in the advertisement in the St. Bernard News was in fact performed in conformance with acceptable medical practice. Whether the corporation is composed of different juridical entities, each responsible for various aspects of care has yet to be explored. This is especially so in light of the “Associate Agreement” valid for one year confect-ed with Dr. Shoemaker named as “Associate”. In sum, Dr. Kern may or may not owe a separate and independent duty to Mrs. Reeb, an essential question plaintiff is entitled to raise at trial. The pleadings and other materials of record sufficiently allege all acts of negligence to be proven by the plaintiff.
For the reasons discussed, the judgment of the trial court is reversed and the matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.

. The advertisement in the Supplement to the St. Bernard News states further: "Our office policy is one in which we will discuss any person’s problem at no charge to determine if chiropractic could be the answer. Thorough examinations are performed if necessary. Finances are then discussed before any further procedure is done.”

. The document contains in paragraph 4 of the agreement that "Corporation and Associate do hereby acknowledge that Associate shall, in all operations hereunder, be regarded as a salaried Associate Chiropractor. Accordingly Associate agrees to abide by all rules, directions, instructions, and requests communicated to Associate, whether verbally or written, by any officer or partner of corporation. Furthermore, Associate hereby agrees diligently, professionally, and competently perform any and all tasks assigned any officer or partner of corporation."