591 So.2d 342 (1991)
Rolf R. SCHROEDER, et al.
v.
BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY, et al.
No. 91-C-0941.
Supreme Court of Louisiana.
December 2, 1991.
Rehearing Denied February 6, 1992.
*343 Dermot S. McGlinchey, Eve Barrie Masinter, James M. Garner, Monica A. Frois, McGlinchey, Stafford, Cellini and Lang, Counsel for applicants.
Frank A. Fertitta, Lane, Fertitta, Lane & Tullos, Carolyn Pratt Perry, Raymon G. Jones, Mary E. Mouton, Barbara L. Malik, Deutsch, Kerrigan & Stiles, Boris F. Navratil, Breazeale, Sachse & Wilson, for respondents.
DENNIS, Justice.
In this summary judgment review, the question is whether Louisiana State University, under the terms of its liability insurance policy, "borrowed" an automobile when a university laboratory school student used his father's car to give a ride to a fellow student who had volunteered to run a school related errand at the request of a teacher who had no knowledge of or control over his means of transportation. The trial court and court of appeal, 577 So.2d 1074, concluded that LSU had "borrowed" the vehicle owned by the driver's father and rendered summary judgment in favor of plaintiff that coverage was afforded under LSU's liability insurance policy for an auto accident in which the students were involved during the errand. We reverse. The words of the insurance policy are clear and explicit: "Anyone else is an insured while using with your permission a covered auto you own, hire or borrow...." Therefore, no further interpretation may be made in search of the parties' intent. Under its generally prevailing meaning, borrow connotes the acquisition of temporary possession, dominion or control of a thing, or the right to direct the use of a thing, not merely the receipt of some benefit from its use by another person. In the present case, under the evidence offered in support of the summary judgment, LSU did not possess, dominate, control or acquire the right to direct the use of the vehicle involved in the accident so as to make the *344 vehicle a "borrowed" automobile under the policy.

FACTS
On Saturday, October 29, 1983, Andrew Eric Schroeder ("Eric") drove his father's car to University Laboratory School ("U. High") on the Louisiana State University campus in Baton Rouge, where he attended high school. On the way to school he picked up Bradley Aucoin, a classmate. Before arriving at school, Eric stopped and purchased a six pack of beer, which one or both of the boys consumed in the parking lot of U. High. The boys had arrived at school around 12:30 p.m. to participate in "Sadie Hawkins Day" events. These events were sponsored by the senior class of U. High with the help of U. High officials. The events were held on the school grounds of U. High and were chaperoned by faculty "sponsors."
Later that afternoon, sometime before 4:00 p.m., Ms. Ater, a faculty sponsor, asked Brad if he knew who was assigned to bring the ice for the sodas which were going to be served at the dance that night. Brad said that he didn't know but volunteered to go get it. Ms. Ater gave Brad money to purchase the ice and asked him to procure it. Ms. Ater did not know that Brad did not have a car. However, Ms. Ater was aware that some mode of transportation would likely be required to reach the place from which she had instructed Brad to obtain the ice. Without Ms. Ater's knowledge, Brad asked Eric to drive him to get the ice. On the way back, Eric and Brad stopped to buy more beer. After resuming the trip back to the school, Eric collided with another car causing severe injuries to the owner of the other car Jeanne Elise Lee. Lee, through her parents, sued Eric, Eric's father, Rolf Schroeder, his insurer, USAA Casualty Insurance Company of America, and her UM insurers, Continental Casualty Company ("CNA") and Safeco Insurance Company of America ("Safeco").

THE CASE BELOW
The present litigation arises from the same vehicular accident as a previous tort suit by Jeanne Elise Lee against Eric, his father Rolf R. Schroeder, their insurer USAA, and Lee's uninsured motorist carriers, CNA and Safeco. Judgment was rendered in favor of Lee in the amount of $1,626,600.00 against all named defendants. USAA, as liability carrier of Schroeder, paid its entire policy limits of $100,000. Lee's UM carriers, CNA and Safeco, paid the balance of the judgment. CNA and Safeco cross-claimed against Rolf R. Schroeder for amounts paid under their policies. These judgments were affirmed on appeal with minor reductions in quantum. Lee v. USAA Casualty Insurance Company of America, 540 So.2d 1083 (La. App. 1st Cir.), writ denied, 542 So.2d 514 (La.), reconsideration denied, 544 So.2d 384 (La.1989).
Schroeder then filed suit against LSU and its insurers on the basis that LSU was vicariously liable for the tortious conduct of Eric, and that Eric was an insured under LSU's automobile policy. CNA and Safeco intervened in the matter asserting that if LSU's policy afforded coverage then Lee was not uninsured or underinsured and LSU's insurers were liable to reimburse them for sums paid out under their policy. The trial court dismissed the claim of vicarious liability on an exception of no cause of action. That ruling is not before the court at this time. Schroeder and the intervenors jointly moved for summary judgment on the issue of whether Eric was an insured under LSU's liability insurance policy. LSU and its insurers made a cross-motion for summary judgment that Eric was not an insured. The trial court found that there was no genuine issue of material fact, with respect to either motion, that the joint movers were entitled to judgment as a matter of law, but that LSU was not. Therefore, the trial court granted plaintiff's and intervenors' joint motion and denied LSU's motion for summary judgment. The trial court found that the term borrow was ambiguous, and in construing the term against the insurance company, found that borrow embraced any use of any vehicle for the benefit of the named insured LSU. LSU and its insurers appealed. The Court of Appeal, First Circuit, affirmed. We granted LSU's application for certiorari to determine whether the words of the insurance *345 contract were ambiguous and whether plaintiff and intervenors are entitled to judgment as a matter of law. LSU did not complain in this application of the denial of its cross-motion for summary judgment.

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711, 714 (5th Cir.1985); McCrae v. Hankins, 720 F.2d 863, 865 (5th Cir.1983); Wright, Miller & Kane, Federal Practice and Procedure, § 2716, at 125 (Supp.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Vermilion Corp., supra; see also United States v. Diebold, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Thornbrough v. Columbus and Greenville R. Co., 760 F.2d 633, 640 (5th Cir.1985). The party who defended against the motion for summary judgment must have his properly filed allegations taken as true and must receive the benefit of the doubt when his assertions conflict with those of the movant. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Thornbrough, supra; Wright, Miller & Kane, supra.

CONSTRUCTION OF THE INSURANCE CONTRACT
It is well settled in our law that general rules of interpretation apply to insurance policies in the same way that they apply to other contracts. Massachusetts Mutual Life Ins. v. Nails, 549 So.2d 826 (La.1989); Savoie v. Fireman's Fund Insurance Co., 347 So.2d 188, 191 (La.1977). A conventional obligation, such as created by an ordinary contract or insurance policy, is a legal relationship whereby the obligor is bound to render a performance in favor of the obligee. La.C.C. art. 1756. In a conventional obligation, the nature of that relationship is governed by the agreement of the parties. Hence, the interpretation of a contract is the determination of the common intent of the parties. La.C.C. art. 2045; Hurst v. Ricard, 514 So.2d 14, 16 (La.1987). Under civilian methodology, the interpretation of a contract is similar to the interpretation of a statute, and vice versa. Id., at 17; Geny, Methode d'Interpretation et Sources en Droit Prive' Positif, No. 98, p. 182 (2d ed. La.St.L.Inst. trans. 1963); see also La.C.C. art. 2046, Comment (c). Civil Code article 2045 further provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Also, in determining the meaning of the words of a contract, they are to be given their generally prevailing meaning. La. C.C. art. 2047; Savoie, supra, at 191; Taylor v. State Farm Mutual Auto Insurance Co., 248 La. 246, 178 So.2d 238, 241 (1965). When the meaning of the words are clear then the courts should look no further in determining the intent of the parties. La. C.C. art. 2046; Soverign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982, 985 (La. 1986). Where the meaning of a contract is to be determined solely from the words upon its face, without the necessity of extrinsic evidence, the appellate courts are as competent to review the evidence as the trial court, and no special deference is usually accorded the trial court's findings. Investors Associates, Ltd. v. B.F. Trappey's Sons, 500 So.2d 909 (La.App. 3d Cir.), writ denied 502 So.2d 116 (La.1987); W. Freedman, Richards on Insurance. § 11:2(i) at 255 (1990).
The issue at hand involves the interpretation of the Continental Policy issued to L.S.U. at the time of the accident. The policy is a standardized national commercial *346 automobile liability policy. It provides that Continental will pay all damages for which anyone is legally liable while he or she was using with L.S.U.'s permission a covered auto owned, hired, or borrowed by L.S.U. The policy provides in pertinent part:
"A. WE WILL PAY.
1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto."
D. WHO IS INSURED.
* * * * * *
2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow ...
The policy does not define the term borrow. Because of Endorsement "1" to the policy, a covered auto includes any auto, whether it be an owned, hired, or nonowned vehicle. The parties therefore agree that the Schroeder vehicle qualifies as any auto under the provisions of the policy. It is undisputed that LSU did not own or hire the Schroeder vehicle. However, the parties dispute whether the vehicle was borrowed within the terms of the insurance policy; and if the vehicle was borrowed, whether Eric used it with LSU's permission.
In our opinion, the words of the insurance policy affording coverage for an "auto you own, hire or borrow" are clear and explicit, and when given their generally prevailing meaning lead to the conclusion that under the facts established for purposes of summary judgment, the Schoeder vehicle was not borrowed by LSU, and thus not covered under the policy. The idea of borrowing in general, and of borrowing a motor vehicle in particular, simply does not encompass, within the generally prevailing meaning of the term, every instance in which a policy holder may have received a benefit from the use of an auto by another.
In common parlance, to borrow means not only that one receives the benefit of the borrowed object's use but also that the borrower receives temporary possession, dominion, or control of the use of the thing. For example, when a person uses his auto to pick up a prescription for a sick friend, he may confer a significant benefit on the invalid, but no one would say that the bedridden friend had borrowed the auto used for the errand. Also, very few persons, if any, would think that LSU had borrowed its employees' vehicles each day during their trips to and from work and lunch, merely because LSU knowingly received a benefit from each employee's private means of transportation. LSU does not borrow thousands of autos during drive time each day simply because LSU benefits from and could not operate without this private informal transportation system. Cf., Trinity Universal Ins. Co. v. Cincinnati Ins. Co., 513 F.2d 915 (6th Cir.1975); Martin v. American Express, Inc., 361 So.2d 597 (Ala.Civ.App.1978). In each of these examples, the person or entity that received the benefit of the use of the vehicle did not have the possession, dominion, control, or the right to control the use of the auto. Therefore because some element of substantial control is generally understood to be included within the prevailing meaning of the act of borrowing, none of the benefitted persons was a borrower under the generally prevailing meaning of that term. Under the facts established in this case for purposes of summary judgment, it logically follows that a reasonable person, a person in the street or an average citizen, would not say that LSU had "borrowed" the Schroeder vehicle.
Additionally, the prevailing meaning of borrowing is essentially the same as that conceived of by the drafters of the Civil Code. The loan for use, or commodatum, is a gratuitous contract by which one person delivers a thing for anothers temporary use. La.C.C. arts. 2891-2909; A. Ezkovich, Beware! The Commodatum Lurks, 58 Tul. L.Rev. 342 (1983). The parties to a loan for use, or commodatum, are referred to as the "borrower" and the "lender." La.C.C. arts. 2898, 2906. The lender retains the ownership of the object, La.C.C. art. 2895, *347 but gratuitously delivers to the borrower the possession and use of the object, subject to the borrower returning the property after he is finished with it. By definition, the commodatum involves the use of nonconsumable things, and historically contemplated the use of instruments of transportation borrowed by others. In the early years of the Civil Code, horses, oxen and donkeys were the most common means of land transportation, and often the subjects of the commodatum, i.e., "borrowing" and "lending." See Lislet and Carleton, The Laws of Las Siete Partidas which Are Still in Force in the State of Louisiana, 623 (1820). The gratuitous loan principles of the Civil Code conform with the prevailing meaning of "borrowing" today, and have equal application to loans for use of our modern vehicles of transportation. See, e.g., Lyle v. Guillot, 143 So. 511, 513 (La.App. 1st Cir.1932) ("A gratuitous loan for use [of an automobile] makes the borrower, after delivery, the master of the thing borrowed, for the purpose of its use and while using it under the loan").
The evidence adduced in support of the summary judgment does not establish beyond genuine dispute that LSU acquired or exercised possession, dominion, control or even the right to direct the use of the vehicle in question while the students were using it to purchase ice for the school activities. In fact, on the present record, a reasonable inference in favor of the non-moving party must be drawn that LSU never had any control over the automobile, even though it may have benefitted from its use by the students. Consequently, the movers failed to demonstrate that they were entitled to a judgment as a matter of law, and the motion for summary judgment was erroneously granted.
The majority of other courts that have interpreted similar borrowed automobile provisions have also concluded that the term borrow connotes much more than merely receiving some benefit from another's use of a third person's vehicle. They have determined that borrowing a car requires possession reflecting dominion and control over the vehicle. See, e.g., Liberty Mutual Insurance Co. v. American Employers Insurance Co., 556 S.W.2d 242 (Tx.1977); Sturgeon v. Strachan Shipping Co., 731 F.2d 255, 258 (5th Cir.1984), en banc. The minority view to the contrary, reflected in Travelers Indemnity Company v. Swearinger, 169 Cal.App.3d 779, 214 Cal.Rptr. 383 (1985), is not persuasive. The California intermediate appellate court concluded that the borrowed vehicle provision in an insurance policy was ambiguous and could be reasonably interpreted to mean that borrowing a vehicle would include receiving benefit of its use without the necessity of having possession, dominion or control. We are convinced, on the other hand, that the insurance provision in question in the present case is clear and explicit, and that the prevailing meaning of the term borrow in the context of automobile lending requires that the borrower acquire substantial possession, dominion, control, or the right to direct the use of the vehicle, and not merely that the use of the vehicle by another person redound by chance to the benefit of a purported borrower.

DECREE
For the reasons assigned, the summary judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED; REMANDED TO THE TRIAL COURT
WATSON, J., concurs in the result.
COLE, J., concurs and assigns reasons.
COLE, Justice, concurring.
I concur in the result reached by the majority. However, in my opinion, whether Eric had authority to lend the car is the fundamental, genuine issue of material fact precluding summary judgment. Morgan v. Matlack, Inc., 342 So.2d 167, 169 (La.1977). If Eric did not have that breadth of control over the car, the issue of what constitutes "borrowing" need not even be reached. Moreover, the Court's holding can perhaps be better understood by exploring an aspect of this case not addressed by the majority *348 opinion: the differences between a mere permittee and a borrower.
The majority opinion discusses the loan for use, or commodatum, but applies only one half of the equation to the facts, the borrower's rights, without commenting on the qualifications of the lender. The opinion notes that the lender retains ownership of the thing loaned, but does not mention that Eric is not the owner of the car and presumably, therefore, cannot loan the car without the owner's consent.
As the majority correctly holds, "borrow" connotes the receiving of authority over some object. Implicit in the notion of derived authority is the lender's power to grant temporary control over the object. The majority finds the case relied on by the lower courts, Travelers Indemnity Co. v. Swearinger, 169 Cal.App.3d 779, 214 Cal. Rptr. 383 (3 Dist.1985), unpersuasive. In my opinion it is persuasive, but distinguishable from this case because the power to grant was, in that case, patent on the facts. In Swearinger, the parents themselves, as owners of the automobiles, consented to the school's borrowing. In this case, Eric's father was never approached by the school. Indeed, the alleged borrowing was a one-time, spur-of-moment event, unlike the borrowing in Swearinger, which was carried out as a matter of school policy, school and parents expressly entering the arrangement. Swearinger merely held that the borrower need not have physical possession of the borrowed item. With that proposition, I, unlike the majority, agree. Certainly a school could hire its students' parents' vehicles. Therefore, I see no bar to a school's borrowing those vehicles. The point I wish to clarify is that to be a borrower, one must derive authority from either the thing's owner or someone to whom the owner has given the discretion to lend.
With respect to the second point, the difference between being a permittee and being a borrower, the distinction can sometimes be a fine one. This is especially so because a permittee may be given such control over a vehicle that he is in effect a borrower as well[1], the latter term connoting greater discretion with respect to the use of the vehicle. Under our jurisprudence, a permittee may be someone who is given little control over the use of the vehicle, someone, in short, given less control than a borrower would be given. Parks v. Hall, 189 La. 849, 181 So. 191, 194 (La.1938) (wherein a chauffeur was held to be a permittee even though the owner only intended for the chauffeur to use the vehicle for the owner's purposes); Millet v. Nelson, 408 So.2d 360 (La.App. 1st Cir. 1981) (permission limited to the right to be a passenger). Borrowing, on the other hand, connotes being authorized to use a thing for one's own purposes.
In Sturgeon v. Strachan Shipping Co., 731 F.2d 255, 260 (5th Cir.1984) (en banc,) the Fifth Circuit set forth the two requirements of being a borrower, "use and possession." W. McKenzie & H. Johnson, 15 Louisiana Civil Law TreatiseInsurance Law and Practice § 66 (1986). Unlike the majority, I do not believe possession is necessary. Underlying the notion of "use and possession," however, is the basic premise that the power to use and possess is derived from someone who has authority to lend the object.
The concepts of permitting and borrowing grew out of the differences in policy language. Generally, in determining whether someone is insured under the owner's policy, the "permittee" analysis is employed; whereas, when determining whether the borrower's policy provides coverage, the issue is couched in terms of "borrowing." This is not always the case, however. In Sturgeon, supra, the omnibus clause of the owner's policy covered permissive users as well as borrowers, distinguishing between the two. Sturgeon at 256.
Despite differences in the two concepts, much of the permittee caselaw could be applied by analogy to borrower cases. For instance, a first permittee sometimes allows a second person to use the car. A second permittee, however, cannot rely on the mere representations of the first permittee *349 regarding his authority to lend. Malmay v. Sizemore, 493 So.2d 620, 623 (La.1986). Therefore, LSU, or rather LSU's agent Brad, should not be able to rely on a student's apparent authority to lend the car if his actual authority is very restricted.[2]
Likewise, "the permission issue is often more complex when the operator has not received permission directly from the owner." W. McKenzie & H. Johnson, 15 Louisiana Civil Law TreatiseInsurance Law and Practice § 54 at 133 (1986). The same could be said for the borrower issue, where, as here, the alleged borrower did not derive its authority directly from the owner. Because I believe the distinction between being a permittee and being a borrower should not be further confounded,
I respectfully concur.
NOTES
[1] American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (La.1970).
[2] In Morgan v. Matlack, Inc., 342 So.2d 167, 169 (La.1977), appeal after remand, 366 So.2d 1071 (1979), writ denied, 369 So.2d 1352 (1972), this court held a vague limit on the first permittee's right to lend the car "when circumstances warrant" was tantamount to giving the first permittee complete discretion to lend.