857 So.2d 546 (2003)
GINGER MAE FINANCIAL SERVICES, L.L.C. (GMFS)
v.
AMERIBANK, FSB
No. 2002 CA 2492.
Court of Appeal of Louisiana, First Circuit.
September 26, 2003.
Todd E. Gaudin, Baton Rouge, for Appellee Plaintiff Ginger Mae Financial Services, L.L. C.
Dale R. Baringer, Baton Rouge, for Appellant Defendant Ameribank, FSB.
Panel composed of Judges FRANK FOIL, BRADY M. FITZSIMMONS and EDWARD J. GAIDRY.
FOIL, J.
This appeal challenges a trial judge's grant of summary judgment in a proceeding to enforce a contractual obligation to repurchase a loan. We affirm.

BACKGROUND
On September 10, 2001, Ginger Mae Financial Services, L.L.C. (GMFS) filed this petition seeking a judgment requiring Ameribank, FSB, a federal bank domiciled in West Virginia, to repurchase a loan. On November 30, 2000, GMFS and Ameribank entered into a "Correspondent Loan Purchase Agreement" (Agreement) providing for the purchase by GMFS of loans made by Ameribank in accordance with the requirements of the agreement. In its petition, GMFS averred that Ameribank submitted a loan package to it for a Georgia *547 resident, John Seymour, in the principal amount of $265,000.00. The loan package contained federal tax returns for Mr. Seymour for the tax years 1998, 1999 and 2000. GMFS agreed to purchase the loan, and the loan was closed in February of 2001. Thereafter, GMFS discovered that Mr. Seymour did not file the federal tax forms for 1998, 1999 and 2000.
At some point in time, John Seymour defaulted on the note. On July 13, 2001, GMFS made a formal demand on Ameribank to repurchase the Seymour loan, asserting that by submitting the tax records to GMFS, Ameribank represented to GMFS that Mr. Seymour had in fact filed them with the IRS before the loan closing date. GMFS asserted that Ameribank breached various express provisions of the Agreement requiring that all documents submitted by Ameribank to GMFS be genuine, all representations be true and accurate, and all representations contained in the loan application be fully investigated by Ameribank.
Thereafter, GMFS filed a motion for summary judgment, asserting that there were no disputed factual questions on the only issue before the court, that is, whether the Agreement gave GMFS the right to force Ameribank to repurchase the Seymour loan. The trial judge initially denied the motion for lack of sufficient proof that the tax returns had not been filed with the IRS. Thereafter, GMFS filed a second motion for summary judgment, attaching thereto a certification from the IRS that no tax form was filed with the IRS by John Seymour for the tax periods 1998, 1999 and 2000.
The trial judge granted the motion for summary judgment, finding that under the clear language of the Agreement, Ameribank was obligated to repurchase the loan. Judgment was entered against Ameribank ordering it to repurchase the loan pursuant to the terms of the Agreement, payable in an amount equal to the unpaid principal balance of the mortgage loan, all unpaid interest on the loan, together with all expenses, including reasonable attorney fees incurred by GMFS relating to the repurchase. Ameribank filed a motion for a new trial, which was denied by the trial judge. This appeal, taken by Ameribank, followed.

DISCUSSION
An appellate court reviews a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Johnson v. Illinois National Insurance Company, XXXX-XXXX, p. 4 (La.App. 1 Cir. 11/09/01), 818 So.2d 100, 102, writ denied, XXXX-XXXX (La.2/8/02), 809 So.2d 139. The motion should be granted only if there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
In its first two assignment of errors, Ameribank urges that the trial judge erred in entering summary judgment because it was disputed whether the tax returns were actually filed by Mr. Seymour, and certain evidence was not submitted by GMFS demonstrating its entitlement to enforce the repurchase provision of the Agreement. We find no merit to these assertions. GMFS offered a certification by the IRS that Mr. Seymour did not file tax returns for the years 1998, 1999 and 2000. Ameribank was free to offer evidence to try to create a factual issue regarding the filing of the tax returns, but did not.
Furthermore, when a contract is not ambiguous and does not lead to absurd consequences, it will be enforced as written and its interpretation is a question of *548 law for the court to decide. Thus, when parties are bound by a valid contract and the material facts involved in the dispute are not contested, the contract's application to the case is a matter of law and summary judgment is appropriate. Johnson v. Illinois National Insurance Company, XXXX-XXXX at p. 4, 818 So.2d at 103. Because this case involves only an issue of contract interpretation, and there are no disputed facts regarding the issue of whether Ameribank is contractually obligated to repurchase the Seymour loan, this case is an appropriate one to be decided on summary judgment.
We turn to the relevant portions of the Agreement. Section 2.5 of the Agreement provides:
Correspondent [Ameribank] warrants that all loan applications and related loan packages submitted by Correspondent to GMFS, LLC hereunder will have been fully investigated by Correspondent, all material representations contained in such applications will have been investigated or ascertained by Correspondent in accordance with prudent underwriting practices, and will be true and correct to the best of Correspondent's knowledge, information and belief; that all documents submitted or to be submitted to GMFS, LLC are genuine; that all representations with respect to the loans are true and correct and meet the requirements and specification of this Agreement; and the prevailing market standards.... (emphasis in original omitted).
An addendum adding Section 2.5.1 to the Agreement provides, in pertinent part:
Correspondent may prepare closing documents for mortgage loans on forms approved by GMFS, LLC and attached hereto as exhibits including but not limited to promissory notes, deeds of trust, mortgages, disclosure statements, and any other documents or disclosures required by state or federal law or GMFS, LLC (collectively "Documents") and that Correspondent warrants that all such Documents as completed with respect to each mortgage loan shall: (1) be accurate, correct, complete, valid, binding and enforceable according to their terms; (2) comply with all applicable disclosure or other requirements under state or federal laws and regulations; and (3) have been provided to the borrowers or others on a timely basis as required by applicable state and federal laws and regulations. Correspondent further warrants that all documents submitted by Correspondent to GMFS, LLC with respect to each mortgage loan are in all respect as valid and genuine and being what on their face they purport to be. (emphasis in original omitted).
Section 7.1 of the Agreement states:
In the event a representation or warranty by Correspondent relating to a mortgage loan purchased by GMFS, LLC is determined by GMFS, LLC to have been inaccurate as of the date made, Correspondent agrees to repurchase such mortgage loan, should GMFS, LLC or the then holder of the mortgage loan so request, at a repurchase price payable in cash equal to the following...(i) the then unpaid principal balance of the mortgage loan, (ii) all accrued but unpaid interest on the mortgage loan at its note rate, (iii) any fee or other amount, if any, in excess of par previously paid by GMFS, LLC to Correspondent relating to such mortgage loan and (iv) all expenses, including reasonable legal fees, incurred by GMFS, LLC or such holder relating to such repurchase, including enforcing Correspondent's obligation to repurchase, (emphasis in original omitted).
*549 Ameribank insists that the trial court erred in relying on the addendum provision to find an obligation on its part to warrant the tax returns were genuine, urging that the warranties contained therein apply only to loan closing documents prepared by the closing bank. Items submitted by the borrower, it insists, fall exclusively under Section 2.5 of the document, which imposes a "due diligence" obligation on Ameribank to fully investigate the borrower's representations contained in the loan application in accordance with prudent underwriting practices. Thus, Ameribank argues, the trial court erred in construing the agreement to impose on it a strict liability-type of warranty on the accuracy of the borrower's representations in the application.
GMFS urges that the addendum merely reinforces Ameribank's obligation in the Agreement and clarifies the main contract provisions. It essentially argues that under the clear terms of the contract, Ameribank warranted the information it submitted to GMFS was genuine. It contends that because the tax returns were not filed with the IRS, they were not "genuine," and by failing to submit genuine documents, Ameribank breached the Agreement, thereby triggering Ameribank's repurchase obligations.
We agree with GMFS's construction of the contract. The addendum clearly states that Ameribank warranted that all documents submitted by Ameribank to GMFS with respect to each mortgage loan were in all respects as valid and genuine and being what on their face they purported to be. Pursuant to the terms of the contract, Ameribank warranted that the tax returns were what on their face they purported to be documents filed with the IRS under the penalty of law. Because GMFS determined that the warranty regarding the tax returns was in fact inaccurate, Ameribank's obligation in Section 7.1 of the Agreement to repurchase the mortgage loan was triggered.
Accordingly, we find that the trial judge was correct in construing the contract to require Ameribank to repurchase the subject promissory note. However, the record indicates that GMFS commenced foreclosure procedures and may have had the collateral for the loan sold at a sheriff's sale. The trial judge should have made a determination of the issues relating to the amount due on the note, including the amount of payments made on the loan or other recoveries GMFS may have had through foreclosure, as well as the reasonableness of attorney fees and expenses incurred by GMFS in foreclosing on the note. Therefore, we remand the case to the trial judge to determine the sums now due on the note and to set the amount of attorney fees both for the trial and the appeal.

CONCLUSION
Based on the foregoing, the judgment is affirmed in part to the extent Ameribank was found to be obligated to repurchase the promissory note. The case is remanded for a determination of the amount due on the note, for any sums due pursuant to the terms of the contract, and to set attorney fees for both the trial and appeal.
AFFIRMED IN PART; REMANDED WITH ORDER