970 So.2d 1007 (2007)
Robert A. GRACE and Janet F. Grace, Individually and on Behalf of Their Minor Child, Elizabeth Leigh Grace
v.
Luis CRESPO and Kimberly Crespo, Individually and on Behalf of Their Minor Child, Sherrand E. Crespo, Allstate Insurance Company, and Sentry Select Insurance Company.
No. 2007 CA 0397.
Court of Appeal of Louisiana, First Circuit.
September 19, 2007.
Writ Denied December 7, 2007.
*1009 Ronnie J. Berthelot, Baton Rouge, Counsel for Plaintiffs/Appellants Robert A. Grace, Janet F. Grace, Individually and on behalf of minor child, Elizabeth L. Grace.
*1010 Neil C. Abramson, Charlotte J. Bell, New Orleans, Counsel for Defendant/Appellee Sentry Select Insurance Company.
Before: GAIDRY, McDONALD, and McCLENDON, JJ.
McCLENDON, J.
In this personal injury suit, plaintiffs, Robert A. Grace and Janet F. Grace, sued individually and on behalf of their minor daughter, Elizabeth Leigh Grace, for injuries the daughter suffered as a result of a single-car accident in Baton Rouge, Louisiana. One of the defendants, Sentry Select Insurance Company (Sentry), filed a motion for summary judgment on the issue of coverage. The trial court granted the motion, and rendered a partial summary judgment denying coverage under Sentry's policy, including the Umbrella/Excess Liability (umbrella/excess) portion of the policy.[1] Plaintiffs appealed.[2] We affirm.

PERTINENT FACTS AND PROCEDURAL BACKGROUND
As part of a comprehensive plan of insurance, Sentry issued a policy with different categories of coverage for Mr. Grace's business interests, and, to varying degrees, his family. In the common policy conditions section of the insurance plan, the various types of coverages were listed and the primary insured was named as: Grace Chenevert Motor Company DBA Southpoint Volkswagen. In addition, a note appearing below the named insured's identification referred the insured to the individual coverage schedules for any additional named insureds.
Each coverage portion of the policy, for example, the automobile coverage versus the commercial garage coverage, also contained its own provisions and conditions. Specifically, the "Preface" to the umbrella/excess coverage stated as follows: "This Coverage Form provides EXCESS LIABILITY and UMBRELLA LIABILITY coverages. Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties, and what is and is not covered."
Elizabeth, a passenger in a friend's auto, was severely injured in a single-car accident that occurred while the friend was driving herself, Elizabeth, and two other friends, to a restaurant. The driver's insurer paid its policy limits. Sentry's comprehensive policy's commercial auto coverage, which covered Elizabeth as an insured, paid the full amount available under the commercial auto's uninsured/underinsured motorist (UM) section. Although *1011 Elizabeth's damages exceeded the amounts paid and tendered, Sentry denied that additional coverage was available to the plaintiffs under any of the other coverages in the policy.
Plaintiffs filed a motion for summary judgment asserting that additional UM coverage was afforded by the policy. The trial court denied the motion. Sentry then filed its own motion for summary judgment on the same coverage issues. After a hearing, the trial court found that the plan, including the umbrella/excess policy, did not extend additional coverage to Elizabeth under the particular facts of the case. Subsequently, the trial court signed a judgment declaring that there was no just reason to delay an appeal and that the denial of plaintiffs motion, and the grant of Sentry's motion, were final judgments for purposes of appeal. See LSA-C.C.P. art. 1915 B. In its oral reasons for judgment, the trial court found that the remaining claim between the parties, which was based on detrimental reliance, did "not involve the same legal theory that the cross motions for summary judgment were premised upon." Plaintiffs appeal the grant of the partial summary judgment in favor of Sentry. Essentially, they argue that the trial court's failure to recognize the availability of UM coverage under the umbrella/excess policy was error.

ARTICLE 1915B CERTIFICATION
Initially, we note that the grant of a partial judgment or partial summary judgment does not ordinarily constitute a final, appealable judgment. LSA-C.C.P. art. 1915 B(1). However, the trial court may certify its interlocutory judgment as a final one "after an express determination that there is no just reason for delay." Id.
When a trial court provides reasons for its certification of the grant of a partial judgment or summary judgment as final, as did the court below, the standard of review is abuse of discretion. R.J. Messinger, Inc. v. Rosenblum, XXXX-XXXX, p. 13 (La.3/2/05), 894 So.2d 1113, 1122. Thus, before we entertain the merits of the appeal, we must determine whether the trial court abused its discretion in certifying the partial summary judgment in favor of Sentry as final for purposes of an appeal.
The jurisprudence has long maintained a policy against multiple appeals that foster piecemeal litigation. However, of equal importance is the need to balance judicial efficiency and economy with the need for review at a time that best serves the interests of the litigants. R.J. Messinger, Inc., XXXX-XXXX at p. 13, 894 So.2d at 1122.
In its reasons for finding no just reason for delay and certification of the partial summary judgment, the trial court noted that the claim under the policy itself and the remaining detrimental reliance claim against Sentry and its agent were not the same. We agree.
The grant of Sentry's motion for summary judgment disposed of the only claim based on whether the policy provided coverage under the facts of the case. The remaining detrimental reliance claim against Sentry, and the agent who sold the policy, is premised on an allegation that the umbrella/excess policy did not provide the coverage the plaintiffs believed they had purchased from Sentry's agent. With such divergent causes of action, piecemeal litigation of the similar issues would not be fostered by consideration of the coverage issue in this appeal. In addition, if the partial summary judgment in favor of Sentry was incorrect, and additional coverage did exist, the detrimental reliance claim could be mooted, saving the court and the litigants considerable time and expense. For these reasons, judicial efficiency and economy appear to weigh in favor of an appeal of the partial summary judgment in *1012 favor of Sentry. Thus, we cannot say that the trial court abused its discretion in finding that there was no just reason to delay this appeal.

APPLICABLE LEGAL PRECEPTS
An insurance contract or policy is a conventional obligation that constitutes the law between the parties to the contract, the insured and the insurer. Lambert v. Lavigne, XXXX-XXXX, p. 3 (La.App. 1 Cir. 9/23/05), 923 So.2d 704, 706, writ denied, 2005-2283 (La.3/10/06), 925 So.2d 515. The goal of judicial interpretation of a policy's wording is to determine the intent of the contracting parties. See LSA-C.C. art. 2045; Cadwallader v. Allstate Insurance Company, XXXX-XXXX, p. 3 (La.6/27/03), 848 So.2d 577, 580. Absent a statutory or public policy conflict, contracting parties, including insurers, are entitled to limit their liability and to impose and enforce conditions placed on the contractual obligations. Lambert, XXXX-XXXX at p. 4, 923 So.2d at 706. Generally, ambiguous policy provisions are construed against the insurer and in favor of coverage. Cadwallader, XXXX-XXXX at p. 4, 848 So.2d at 580; see LSA-C.C. arts. 2056 & 2057. However, an insurance contract or policy should not be interpreted in an unreasonable manner under the guise of contractual interpretation to enlarge or restrict the applicable provisions beyond what is reasonably understood from unambiguous terms. The rules of construction simply do not authorize a manipulation or perversion of the contract's language to create an ambiguity where none exists. Cadwallader, XXXX-XXXX at p. 3, 848 So.2d at 580. A determination of the existence or absence of an ambiguity in a contract entails a question of law. Claitor v. Delahoussaye, XXXX-XXXX, p. 11 (La.App. 1 Cir. 5/28/03), 858 So.2d 469, 478, writ denied, XXXX-XXXX (La.10/17/03), 855 So.2d 764.
Summary judgment shall be rendered if no genuine issue of material fact remains, and the movant is entitled to summary judgment as a matter of law. LSA-C.C.P. art. 966 B. When parties are bound by a valid contract and material facts are not in conflict, the contract's application to the case is a matter of law and summary judgment would be appropriate. Ginger Mae Financial Services, L.L.C. v. Ameribank, FSB, 2002-2492, p. 4 (La.App. 1 Cir. 9/26/03), 857 So.2d 546, 548, writ denied, 2003-2983 (La.1/16/04), 864 So.2d 634. An appellate court reviews de novo a trial court's decision to grant a motion for summary judgment, using the same criteria that govern the trial court's consideration of the motion. Ginger Mae Financial Services, L.L.C., 2002-2492 at p. 3, 857 So.2d at 547.

ANALYSIS
Undeniably, Elizabeth suffered severe and tragic injuries. However, the policy language sets the parameters of the agreement between the contracting parties, as opposed to post-agreement circumstances. To receive UM benefits under the umbrella/excess portion of the policy, Elizabeth had to qualify as a liability insured under that coverage. See Magnon v. Collins, 98-2822, p. 5 (La.7/7/99), 739 So.2d 191, 196; Lambert, XXXX-XXXX at p. 4, 923 So.2d at 706. Although we agree with plaintiffs that the umbrella/excess policy was part of an overall plan of insurance, a common conditions policy provision referred the insured to the individual coverage schedules for any additional named insureds, and the clear language of each separate coverage in the plan provided for conditions and limitations of a particular coverage.
In the umbrella/excess coverage portion, the named insureds were limited by the following provision:

*1013 If you, the Named Insured, are designated in the Declarations as:
1. An individual, you and your spouse are insureds, but only for the conduct of a business of which you are the sole proprietor.
2. A partnership or joint venture, you and your members, your partners and their spouses are insureds, but only with respect to the conduct of your business.
3. An organization other than a partnership or joint venture, you are an insured with respect to the conduct of your business. (emphasis added).
Even assuming Elizabeth was specifically named on the declarations page of the umbrella/excess policy as a named insured, which she was not, it is undisputed that Elizabeth was not conducting business of any kind, on behalf of any business owned by her father or another named insured. On this issue, we find no ambiguity in the policy. Thus, Elizabeth does not qualify for coverage under that provision.
Plaintiffs also rely on another provision of the umbrella/excess portion of the policy to establish coverage for Elizabeth. To provide additional umbrella/excess coverage for himself and his family, Mr. Grace purchased the "Designated Individual Option," and was named in the umbrella/excess policy as such. The option expanded the "Who is an Insured" provision, and extended coverage under the following restrictive circumstances:
With respect to the `servicing' or use of any `auto' you own, borrow, or hire, no person or organization is an insured except:
You or
Any person or organization scheduled as a Designated Individual including their family members with respect to;
(1) Any `auto' used in your business; or
(2) Personal use of any `auto' you own, borrow, or hire.
Clearly, Elizabeth is a family member. However, the record provides no support for a finding that Elizabeth was using an auto in her father's business at the time of the accident, that she or her father owned the auto involved in the accident, or that she hired the auto. Thus, category (1) is not applicable.
However, plaintiffs assert that the term "borrow" in category (2) is synonymous with the word "use." They argue that Elizabeth, as a passenger, was using her friend's car to get to a local restaurant. Thus, Elizabeth borrowed the auto to reach her destination, thereby fulfilling the requirement for coverage.
In Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 346 (La.1991), our supreme court found that the words of the policy providing coverage for an "`auto you own, hire, or borrow' are clear and explicit. . . ." Further, the Schroeder court held that "the prevailing meaning of the term borrow in the context of automobile lending requires that the borrower acquire substantial possession, dominion, control, or the right to direct the use of the vehicle, and not merely the use of the vehicle by another person redound by chance to the benefit of a purported borrower." Schroeder, 591 So.2d at 347.[3] Although the facts here are somewhat different from those in Schroeder, the legal interpretation of the term "borrow," as used in an insurance contract, *1014 has significance and has analogous application here. See Schroeder, 591 So.2d at 346-47.
The auto involved in the accident was owned by the family of the driver, and covered by their insurer. Elizabeth was not driving the auto; she was a guest passenger. We cannot agree that Elizabeth's act of acceptance of a ride in a friend's auto, occupied by other friends who were all going out to eat together, qualifies as an act of substantial possession or control of the auto involved in the single car accident. Further, the decision to stop by Elizabeth's house prior to going to Chili's also does not establish the necessary control. Even if the driver would have agreed to change the plans, and return Elizabeth to her home if she so requested, such a direction would not exhibit sufficient characteristics of the requisite level of dominion, control, or direction. The expansive reading suggested by plaintiffs ignores the unambiguous policy language and would lead to coverage beyond anything reasonably contemplated by the contracting parties. Thus, the particular facts herein do not support a finding that the auto was borrowed.
This holding is supported even in the absence of the Schroeder analysis. The plain, unambiguous wording of the policy cannot be manipulated to enfold the plaintiffs' interpretation. The umbrella/excess coverage provisions clearly alerted the named insured that the policy restricted coverage in certain circumstances and that the provisions must be read to determine what was "not covered." This portion of the policy did not cover all uses of a vehicle; rather, it limited coverage to a particular type of "use," that is, use of an auto that was owned, borrowed, or hired. By creating these exclusionary categories, the word "borrow" obviously modified the term "use," and was not meant to be interchangeable with same.
Plaintiffs also argued that Mr. Grace, as a named individual designee, could reasonably assume from the wording of the policy that he had obtained umbrella and excess coverage for himself and his family under all, or at least most, circumstances. Therefore, with various ambiguous or conflicting provisions, the policy should be construed to provide coverage. However, finding no ambiguity in the applicable provisions themselves, especially in light of the policy's notice to insureds that the umbrella/excess policy contained provisions limiting coverage and that the provisions must be read to determine the extent of coverage, we find no merit in plaintiffs' argument.
The final general argument is that a denial of the statutorily mandated opportunity to select UM coverage automatically reads UM coverage into the umbrella/excess coverage. Whether UM coverage was offered or validly rejected is relevant only if the claimant has qualified as a liability insured under the applicable language of the policy. Magnon, 98-2822 at pp. 5, 739 So.2d at 196; Lambert, XXXX-XXXX at p. 4, 923 So.2d at 706. Under the facts of this case, each coverage had its own named insureds, conditions, and restrictions. Elizabeth did not qualify as a liability insured under the provisions of the umbrella/excess coverage. See Magnon, 98-2822 at pp. 5-10, 739 So.2d at 196-199; Lambert, XXXX-XXXX at p. 4, 923 So.2d at 706. Thus, the question of whether UM coverage was offered or validly rejected is not relevant here.
For these reasons, we affirm the grant of Sentry's motion for summary judgment denying any additional coverage. The costs of the appeal are assessed to plaintiffs, Robert A. Grace and Janet F. Grace, *1015 individually and on behalf of their minor daughter, Elizabeth Leigh Grace.
MOTION TO EXPEDITE DENIED AS MOOT; AFFIRMED.
NOTES
[1] A separate claim against Sentry remained in the court below, despite the grant of Sentry's motion on the issue of coverage. Thus, the grant of Sentry's motion was a partial summary judgment because it did not dismiss Sentry from the suit.
[2] In a separate, unpublished companion case, Grace v. Crespo, XXXX-XXXX (La.App. 1 Cir. 9/14/07), plaintiffs attempted to appeal the trial court's previous denial of their motion for summary judgment on the issue of coverage. In that matter, we found that the interlocutory judgment denying the motion could not be designated as a final judgment under LSA-C.C.P. art. 1915 B, dismissed the appeal, and denied Sentry's motion to consolidate the two appeals. However, as part of this overall appeal, we have reviewed the interlocutory judgment, and plaintiffs' arguments.

To the extent that plaintiffs attempted to assign error in this appeal to the trial court's failure to find other defendants liable in the judgment denying plaintiffs' motion, we find that assignment was abandoned for failure to present argument or reference to the record. See URCA, Rule 2-12.4. In addition, we note that the plaintiffs' motion to expedite 2007CA0397 was effectively granted by placement of this appeal on the August docket with the companion case, 2007CA0394. Thus, we deny the motion as moot.
[3] Plaintiffs attempt to distinguish Schroeder, and rely instead on Stunkard v. Langlinais, 97-1006 (La.App. 3 Cir. 2/4/98), 708 So.2d 1117. While a third circuit opinion is not controlling authority for this court, we also note that the supreme court's analysis in Schroeder was not mentioned, and the driver and passenger in Stunkard were co-employees using a vehicle insured and leased or hired by their employer.