STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 1373

THE COUNTRY CLUB OF LOUISIANA PROPERTY
OWNERS ASSOCIATION, INC.

VERSUS

THE BATON ROUGE WATER WORKS COMPANY

Judgment Rendered: ___AUG 1 7 2020___

* * * * *

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 641552

Honorable R. Michael Caldwell, Judge Presiding

* * * * *

| | |
|---|---|
| Kenneth H. Hooks, III<br>H. Price Mounger, III<br>Baton Rouge, LA | Attorneys for Plaintiff-Appellant,<br>The Country Club of Louisiana<br>Property Owners Association, Inc. |
| Brett P. Furr<br>Jonathan A. Moore<br>Baton Rouge, LA | Attorneys for Defendant-Appellee,<br>The Baton Rouge Water<br>Works Company |

* * * * *

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**HIGGINBOTHAM, J.**

In this action alleging breach of contract and unjust enrichment, plaintiff, The Country Club of Louisiana Property Owners Association, Inc. ("CCL"), appeals the trial court's grant of summary judgment in favor of defendant, The Baton Rouge Water Works Company ("BRWW").

## FACTS AND PROCEDURAL HISTORY

In May of 1985, Country Club Joint Venture[1] and BRWW entered into a Contract for Private Fire Hydrants for the installation of fire hydrants in the Country Club of Louisiana Subdivision ("the contract"). The contract[2] provided that BRWW would be paid by CCL for each hydrant installed at the annual rate approved by the Louisiana Public Service Commission unless and until the area included within the subdivision was incorporated into the city limits of Baton Rouge or into an official and recognized fire district that assumed responsibility for such hydrants.

Thereafter, CCL paid the annual rate for the hydrants until around April 16, 2015, when CCL notified BRWW that it was protesting the fees for the hydrants because it discovered that, at the time the contract was entered into, the subdivision was located within the St. George Fire Protection District ("St. George"), an official and recognized fire district within the Parish of East Baton Rouge. On August 14, 2015, CCL filed a petition for damages and breach of contract[3] alleging that BRWW breached the contract and was unjustly enriched by the payments made by CCL. In its petition, CCL stated that because the subdivision was in an

---

[1] The contract was between Country Club Joint Venture and BRWW. The contract was transferred to CCL after development of the subdivision was complete.

[2] The contract also provided for the installation of thirty fire hydrants at the cost of $45,507.00, which was paid and is not at issue in this case.

[3] CCL's petition also sought a temporary restraining order and preliminary injunction restraining BRWW from disconnecting or stopping water service to any of the fire hydrants servicing the Country Club of Louisiana Subdivision.

2

official and recognized fire district, BRWW improperly billed and collected from CCL payment for each hydrant located within the subdivision from 1985 through the date of the filing of the petition. In its petition, CCL requested repayment of all fees CCL paid that it alleged were improperly charged by BRWW. On August 17, 2015, after CCL filed suit, BRWW received an email from St. George stating that it agreed to pay BRWW for the private hydrants within the Country Club of Louisiana Subdivision.

CCL, in a second supplemental and amended petition filed on March 14, 2017, alleged that after the contract was executed, St. George immediately assumed responsibility for all hydrants in CCL because the hydrants were located within St. George. CCL contended that St. George assumed responsibility for the hydrants by "at minimum, conducting annual inspections, performing flush and flow tests of the fire hydrants and maintaining the hydrants in accordance with the National Fire Protection Association."

After several exceptions[4] were considered and ruled upon, BRWW filed a motion for summary judgment asserting that there were no genuine issues of material fact and that BRWW was entitled to judgment as a matter of law. Specifically, BRWW alleged that under the terms of the contract, it was CCL's obligation to pay for the hydrants until St. George assumed responsibility to pay for the hydrants on August 17, 2015. In favor of its motion for summary judgment, BRWW attached an affidavit of Hays D. Owen, the Senior Vice

---

[4] BRWW filed a peremptory exception raising the objection of no cause of action for breach of contract and unjust enrichment claims, which was granted by the trial court. However, that judgment was reversed by this court, which held that CCL clearly set forth a cause of action for breach of contract. This court did not address the unjust enrichment issues because it found that CCL stated a valid cause of action for breach of contract. **Country Club of Louisiana Property Owners Association, Inc. v. Baton Rouge Water Works Company,** 2017-1649 (La. App. 1st Cir. 6/4/18) 2018 WL 2676673 *4. Thereafter, BRWW filed a peremptory exception raising the objection of no cause of action for unjust enrichment and a peremptory exception raising the objection of prescription. BRWW's objection of no cause of action for unjust enrichment was denied by the trial court, but BRWW's objection of prescription was granted by the trial court, and CCL's claim for breach of contract was limited to claims arising on or after August 14, 2005.

President of BRWW; the contract; an August 17, 2015 email stating that St. George was willing to accept and pay rent for the CCL hydrants; CCL's supplemental and amended claim for damages; and a deposition of Chief Gerard Tarleton, fire chief for St. George.

In response, CCL filed an opposition to BRWW's motion and a cross motion for summary judgment.[5] Specifically, CCL contended that under the terms of the contract, because the hydrants, from the contract's inception, were installed in St. George, St. George immediately assumed responsibility for them, and CCL should have been released from responsibility for paying BRWW for the hydrants with no action required on CCL or St. George's part. In favor of its opposition and motion, CCL attached the responses of BRWW to interrogatories and requests for production, the contract, and Chief Tarleton's deposition.

BRWW and CCL's competing motions for summary judgment came before the trial court for a hearing on April 15, 2019. The trial court in interpreting the contract stated: "until [BRWW] was notified by [St. George] that they were assuming responsibility for such hydrants, [CCL] had an obligation to pay. ... That was not assumed by St. George until some time in August of 2015." After the hearing, the trial court signed a judgment on August 6, 2019, granting BRWW's motion for summary judgment, overruling CCL's motion for summary judgment, and dismissing CCL's claims with prejudice. It is from this judgment that CCL appeals contending that: 1. Summary judgment was inappropriate as the lease provisions were ambiguous and the intent of the parties was unclear, and 2. Even if the terms of the contract were clear and unambiguous, the trial court's interpretation of those terms was legally erroneous.

---

[5] On appeal, CCL requested that summary judgment in favor of BRWW be reversed and that the matter be remanded to the trial court for a trial on the merits. CCL did not ask this court to address its motion for summary judgment.

4

# SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **All Crane Rental of Georgia, Inc. v. Vincent**, 2010-0116 (La. App. 1st Cir. 9/10/10), 47 So.3d 1024, 1027, writ denied, 2010-2227 (La. 11/19/10), 49 So.3d 387. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3).

The burden of proof rests on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1). If, however, the movant fails in his burden to show an absence of factual support for one or more of the elements of the adverse party's claim, the burden never shifts to the adverse party, and the movant is not entitled to summary judgment. **Carr v. Louisiana Farm Bureau Cas. Ins. Co.**, 2017-0589 (La. App. 1st Cir. 3/14/18), 244 So.3d 823, 826.

Appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Bouquet v. Williams**, 2016-0134 (La. App. 1st Cir. 10/28/16), 206 So.3d 232, 237, writs denied, 2016-2077, 2016-2082 (La. 1/9/17), 214 So.3d 870, 871. Because it is the applicable substantive law that determines materiality,

5

whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Succession of Hickman v. State Through Board of Supervisors of Louisiana State University Agricultural and Mechanical College**, 2016-1069 (La. App. 1st Cir. 4/12/17), 217 So.3d 1240, 1244.

The substantive law applicable herein is the law governing the interpretation of a contract. When parties are bound by a valid contract and material facts are not in conflict, the contract's application to the case is a matter of law and summary judgment would be appropriate. **Ginger Mae Financial Services, L.L.C. v. Ameribank, FSB**, 2002-2492 (La. App. 1st Cir. 9/26/03), 857 So.2d 546, 548, writ denied, 2003-2983 (La. 1/16/04), 864 So.2d 634.

"Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless the written expression of the common intention of the parties is ambiguous. **Campbell v. Melton**, 2001-2578 (La. 5/14/02), 817 So.2d 69, 75. The determination of whether a contract is clear or ambiguous is a question of law. **Sims v. Mulhearn Funeral Home, Inc.**, 2007-0054 (La. 5/22/07), 956 So.2d 583, 590. A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, its terms are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed. **Campbell**, 817 So.2d at 75. In motions for summary judgment where a contract is ambiguous and the intent of the parties becomes a question of fact, very often, there are conflicting affidavits concerning the intent of the parties and granting a summary judgment is not appropriate. **Carter v. BRMAP**, 591 So.2d 1184, 1189 (La. App. 1st Cir. 1991). The

interpretation of ambiguous terms in a contract requires construction against the contract's drafter. See La. Civ. Code art. 2056; **Campbell**, 817 So.2d at 75.

With these rules of contract interpretation and summary judgment practice in mind, we review *de novo* the provision of the contract at issue. The contract provided in pertinent part:

> 3. Unless and until the area included within COUNTRY CLUB OF LOUISIANA SUBDIVISION shall be incorporated in the city limits of Baton Rouge, or into an official and recognized fire district which shall assume responsibility for such fire hydrants, Customer agrees that it will pay for each such fire hydrant at the annual rate as approved by the Louisiana Public Service Commission.

The following facts are not reasonably disputed by either party: BRWW and CCL entered into the contract in 1985 for BRWW to provide hydrants to CCL. The contract was a form contract drafted by BRWW and included the above provision for payment of the hydrants at an annual rate. At the time the contract was entered into, the subdivision was located within St. George. After the contract was signed, BRWW billed CCL at the rate of $300.00 per year per hydrant. Until 2015, CCL paid the invoices submitted to them by BRWW for the hydrants. CCL filed a temporary restraining order and preliminary injunction as well as a breach of contract claim on August 14, 2015. Three days after suit was filed, Chief Tarleton sent an email to Pat Kerr of BRWW stating the following: "[t]he St. George Fire Protection District is willing to accept these hydrants as public hydrants and pay rental at the rate of $50.00 per year." In a reply email, Mr. Kerr stated: "[p]lease perfect this transfer of private fire hydrants to St. George Fire Protection District with Chief Tarleton. We should transfer the hydrants from CCL to St. George effective today."

The evidence submitted in favor of summary judgment discussed BRWW and St. George's responsibilities for the hydrants. In the affidavit of Mr. Owen, he stated that "[u]nder the contract, BRWW is obligated and responsible for

7

maintaining the fire hydrants in the Country Club of Louisiana Subdivision until an official and recognized fire district assumed responsibility for such fire hydrants." According to the deposition of Chief Tarleton, St. George's responsibility is to inspect the hydrants twice a year, and if there are issues with the hydrants, they notify BRWW. Chief Tarleton pointed out that St. George checks the hydrants for two reasons: "one, to make sure they work and, two, for our rating purposes" with Insurance Service Organization. When Chief Tarleton was asked about when St. George began inspecting and testing the hydrants, he replied: "We've always done it" since day one of the subdivision. According to Chief Tarleton, BRWW maintained the hydrants since the execution of the contract, and still maintains the hydrants even though St. George began to pay for the hydrants at the public rate. Thus, it appears from the summary judgment evidence that BRWW and St. George have maintained a working relationship with regard to the inspection and maintenance of the fire hydrants in the subdivision since its inception, and the only thing that has changed since Mr. Kerr's email is that St. George began to pay for the hydrants.

In the contract, CCL agreed that it would pay for each fire hydrant at the annual approved rate until the subdivision shall be incorporated into an official and recognized fire district, which shall assume responsibility for such hydrants. CCL was obligated to pay BRWW for the hydrants until an official and recognized fire district "assume[d] responsibility" for the hydrants. The substance of CCL's argument is not that BRWW failed to perform under the contract, but rather that CCL's contractual obligation to pay BRWW for the hydrants ceased upon St. George assuming responsibility for the hydrants, i.e., a resolutory condition[6] that would cause CCL's obligation to pay to end. CCL contends that BRWW should not have continued to bill and accept payment from CCL once the resolutory

---

[6] If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory. La. Civ. Code art. 1767.

8

condition occurred, and BRWW should have billed St. George. Further, CCL argued that the contract provided that the recognized fire district **shall** assume responsibility for such fire hydrants, making the provision mandatory.

In interpreting this contract and its application to this case, the critical issue is determining when CCL's obligation to pay BRWW ceased. In order to do so, we must interpret the phrase in the contract "assume responsibility for." The trial court interpreted the language as assuming responsibility for payment of the hydrants. "Assume responsibility for" has no clear language bearing on payment and is susceptible of different interpretations. Its meaning cannot be ascertained from the language employed. Thus, we find that the intent of BRWW and CCL in the contract is not clear, but rather is ambiguous. Since the intent of the parties is unclear, intent becomes a question of fact. The granting of summary judgment is appropriate only if there is no genuine issue as to material fact.

The evidence submitted in favor of summary judgment did not address the intent of the parties in entering into the contract, but rather revealed the responsibility for the hydrants taken by BRWW and the responsibility taken by St. George. From that evidence alone, we cannot determine whether St. George "assumed responsibly for" the hydrants under the contract. Considering that the contract is ambiguous and subject to various interpretations and that, BRWW drafted the contract,[7] we must conclude genuine issues of material fact remain, rendering summary judgment inappropriate.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court granting summary judgment in favor of the Baton Rouge Water Works Company and remand the matter to the trial court for further proceedings. All costs of the appeal

---

[7] As noted, the interpretation of ambiguous terms in a contract requires construction against the contract's drafter.

9

are assessed to defendant-appellee, the Baton Rouge Water Works Company in the amount of $1,433.00.

**REVERSED AND REMANDED**.