STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**10-496**


MARTIN PETITJEAN  II, ET AL.

VERSUS

SAMSON CONTOUR ENERGY E & P, LLC, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2008-10299 "E"
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of John D. Saunders, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED.**


**Don Ray Beard**
**Attorney at Law**
**318 St. Charles St.**
**Baton Rouge, LA 70802**
**(225) 343-0100**
**Counsel for Defendant Appellee:**
**Samson Contour Energy E & P, LLC**

**Christopher Everett Janke**
**Dennis, Bates & Bullen, LLP**
**318 St. Charles St.**
**Batom Rouge, LA 70802**
**(225) 343-0100**
**Counsel for Defendant Appellee:**
**Samson Contour Energy E & P, LLC**

**Kenneth O'Neil Privat**
**Attorney at Law**
**P. O. Drawer 449**
**Crowley, LA 70527-0449**
**(337) 783-7142**
**Counsel for Plaintiff Appellant:**
**Martin Petitjean  II**
**Martin Petitjean  III**
**Desiree S. T. Petitjean Casey**
**Yvette S. M. Claire Petitjean**
**Monique d'Youville Petitj Benoit**
**Claudette Petitjean Germano**

**William Seay Strain**
**William S. Strain & Associates**
**422 w. Woodstone Court**
**Baton Rouge, LA 70808**
**(225) 769-5492**
**Counsel for Defendant Appellee:**
**Samson Contour Energy E & P, LLC**
**CL&F Resources, L.P.**
**G. Exploration, LLC**
**R. Bohanan & Associates, LLC**
**Ridge Production II, LLC**
**Crystal Land Management, Inc.**

**Robert Thomas Jorden  Jr.**
**Gordon Arata**
**400 E. Kaliste Saloom, # 4200**
**Lafayette, LA 70508**
**(337) 237-0132**
**Counsel for Defendant Appellee:**
**Patricia Lynn Richard**

**Richard Charles Ellis**
**William S. Strain & Associates**
**422 E. Woodstone Court**
**Baton Rouge, LA 70808**
**(225) 382-3712**
**Counsel for Defendant Appellee:**
**Samson Contour Energy E & P, LLC**

**Julie Deshotels Jardell**
**Gordon, Arata, McCollam, et al**
**P. O. Box 81829**
**Lafayette, LA 70598-1829**
**(337) 237-0132**
**Counsel for Defendant Appellee:**
**Patricia Lynn Richard**

**SAUNDERS, Judge.**

Herein, we address whether the trial court erred in granting summary judgment in favor of the Appellee and in finding that prescription had not been interrupted as to the Appellants' mineral servitude. For the following reasons, the judgment of the trial court is affirmed.

**FACTS AND PROCEDURAL HISTORY:**

The case before us addresses a mineral servitude wherein the Appellants claim to be the owners of an undivided 1722/3042 interest in the minerals underlying Tracts 1, 2 and 5 of Sections 20 and 28, Township 10 South, Range 2 East, Acadia Parish, Louisiana (hereinafter referred to as the "subject tracts").

The subject tracts were initially part of a larger area of land held and administered by W. Petitjean & Company. In 1979, an act of distribution of minerals was executed from the company to its partners. By a judicial compromise in November of 1993 (and corrected by an Act of Correction recorded November 2, 2001), all of the co-owners, including the Appellants, partitioned the surface land of the property that they owned in indivision, including the subject tracts. The compromise was amended in 2001 to provide the following regarding mineral reservations:

> *All mineral interests pertaining to any properties partitioned will remain in undivided ownership whether currently under production or not, for the maximum allowable period of time.* Each owner of the mineral interest shall retain their executive rights over those mineral interests.
>
> The distributees hereby further amend the document by inserting the foregoing paragraph.

(Emphasis added).

In August of 2000, Prize Energy (hereinafter referred to as "Prize") entered into a one year lease extension with the Appellants and other mineral and surface owners

on a 5.78 acre tract of land (comprising tract 8 within the Plattsmier MT RC SUA Unit). In December of 2001, Prize obtained a new mineral lease from the Appellants and other surface and mineral owners over a 3.73 acre tract of land (comprising tract 9 within the Plattsmier MT RC SUA Unit).

In 2006, the Plattsmier-Hulin No. 1 Well was drilled and completed. The subject tracts are located within the exterior boundary of the Plattsmier MT RC SUA Unit, of which Samson Contour Energy E & P, L.L.C. (hereinafter referred to as the "Appellee") is the operator.

It has been stipulated between the parties that no oil, gas, or other minerals have been produced from a well located on the subject tracts for a period in excess of ten years prior to the conduct of operations on the Plattsmier-Huilin No. 1 Well.

The Appellants made demand on the Appellee to provide reports and drilling costs in accordance with La.R.S. 30:103.1 and La.R.S. 30:103.2. The Appellee responded by denying that the Appellants had any mineral ownership in the subject tracts inasmuch as any mineral servitude that they may have had an interest in had since prescribed. Thereafter, the Appellants filed suit requesting that they be paid their mineral interest on the subject tracts. On cross-motions for summary judgment, the trial court denied the Appellants' motion and granted summary judgment in favor of the Appellee. It is from this judgment that the Appellants appeal.

**APPELLANTS' ASSIGNMENT OF ERROR**:

The Appellants assert that the trial court erred in granting summary judgment in favor of the Appellee and in finding that the requirements of La.R.S. 31:75 were not satisfied by the language of the 1993 judicial compromise.

**LAW AND DISCUSSION ON THE MERITS:**

<u>Standard of Review</u>

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966.

<u>Discussion</u>

The issue before this court is whether summary judgment granted in favor of the Appellee was appropriate. More specifically, we are asked by the Appellants to consider whether the language of the 1993 judicial compromise was sufficient to meet the requirements of La.R.S. 31:75, which states that the interruption of prescription resulting from unit operations may extend to the entirety of the tract burdened by a mineral servitude regardless of the location of the well or whether all of the tract is included within the unit.

From this court's examination of the record, it is apparent that a mineral servitude was created through the 1993 judicial compromise.

It is well-settled law that a mineral servitude is extinguished by prescription resulting from non-use for ten years. La.R.S. 31:27(1). Such prescription against a mineral servitude is interrupted by good faith operations for the discovery and production of minerals. La.R.S. 32:29.

The parties have stipulated that no oil, gas, or other minerals have been produced from a well located on the subject tracts for a period in excess of ten years

prior to the conduct of operations on the Plattsmier-Huilin No. 1 Well in 2006.

Ten years of non-use alone is not necessarily enough to extinguish the servitude on the subject tracts. If operations were conducted on land other than the subject tracts, but within the boundaries of the well unit encompassing the subject tracts, prescription would be interrupted as to the subject tracts.

> Operations conducted on land other than that burdened by a mineral servitude and constituting part of a conventional or compulsory unit that includes only a part of the land burdened by the servitude will, if otherwise sufficient to interrupt prescription according to Articles 29 through 32, interrupt prescription only as to that portion of the tract burdened by the servitude included in the unit provided such operations are for the discovery and production of minerals from the unitized sand or sands.

La.R.S. 31:33.

Going further, La.R.S. 31:75 provides that land located outside of the well unit, but still burdened by the mineral servitude, will have its prescription interrupted by operations conducted within the well unit on land not burdened by the mineral servitude, so long as the parties agree expressly and in writing to invoke the benefits of the statute.

> The rules of use regarding interruption of prescription on a mineral servitude may be restricted by agreement but may not be made less burdensome, except that parties may agree expressly and in writing, either in the act creating a servitude or otherwise, that an interruption of prescription resulting from unit operations or production shall extend to the entirety of the tract burdened by the servitude tract regardless of the location of the well or of whether all or only part of the tract is included in the unit.

La.R.S. 31:75.

In the present matter, prescription began to run against the Appellants with the origination of the servitude in 1993. The 2001 amendment to the compromise had no effect on the prescriptive period. If no interruption has occurred, then the servitude

-4-

should have extinguished in 2003—three years prior to the conduct of operations on the Plattsmier-Huilin No. 1 Well.

The Appellants contend that their mineral rights with respect to the subject tracts have not prescribed, and they cite La.R.S. 31:75 as the source of the interruption. They urge that the following language of the 1993 judicial compromise invoked, expressly and in writing, the benefits of La.R.S. 31:75: "All mineral interests pertaining to any properties partitioned will remain in undivided ownership whether currently under production or not, for the maximum allowable period of time."

The Appellants' argument that La.R.S. 31:75 is applicable to the present matter would suggest that at some point between 1993 and 2003, there were operations conducted on lands outside of the mineral servitude and that some portion of the mineral servitude was encompassed within the well unit inside which the operations were conducted.

We find that even if such operations had occurred, the language used in the 1993 judicial compromise was insufficient to invoke La.R.S. 31:75. The statute requires that the parties agree *expressly* and in writing that "an interruption of prescription resulting from unit operations or production shall extend to the entirety of the tract burdened by the servitude tract regardless of the location of the well or of whether all or only part of the tract is included in the unit."

Generally, in interpreting contracts, we look to the intent of the parties. La.Civ.Code art. 2045. Here, however, we find that a stricter analysis is necessitated by the requirement of La.R.S. 31:75 that there be an express writing.

The Appellants' written agreement merely states that their mineral interests will remain in undivided ownership for the maximum allowable period of time—making

no mention of La.R.S. 31:75 or its intention to have prescription interrupted on the entirety of the tract regardless of well location. While it is the view of this court that "La.R.S. 31:75" need not be specifically mentioned in the writing, the language used must leave no question that the parties intend to invoke the benefit of having the interruption of prescription extended to lands beyond what would occur under the default operation of law. It is not enough that the party's intent be discernable from a close reading of the contract. The desire to invoke the statute must be clearly driven home. It must be lucent enough to outside parties as to alert them that prescription will be interrupted and mineral rights will be preserved by operations conducted on lands not burdened by the mineral servitude.

We find that the language of the 1993 judicial compromise lacks the sufficient clarity discussed above. Accordingly, we do not find that the language of the 1993 judicial compromise amounts to an expressly written agreement as contemplated by the statute.

While the jurisprudential history on the interpretation of La.R.S. 31:75 is limited, we note the case of *White v. Evans*, 457 So.2d 159 (La.App. 2 Cir. 1984), *writ denied*, 462 So.2d 207, where the court found the following language to be in compliance with the requirements of La.R.S. 31:75:

> It is further agreed that ... production on any part of the pooled premises shall constitute an interruption of prescription liberandi causa then running against the ... mineral rights ... owned by any of the parties constituting SECOND PARTY in and to all of the lands covered by this pooling agreement and as to any and all other lands covered by any and all of said leases and so long as there may be production of gas from any portion of the premises pooled herein or so long as royalty in lieu of such production shall be paid in accordance with the terms of this agreement, the same shall constitute an interruption of the running of prescription liberandi causa applicable under the law of the State of Louisiana to mineral servitudes. . .

*White*, 457 So.2d at 161.

For the reasons stated above, this court finds that the language used in the Appellants' 1993 judicial compromise was insufficient and fails to satisfy the requirements of La.R.S. 31:75.

**CONCLUSION:**

For the foregoing reasons, we find that the language of the 1993 judicial compromise was insufficient in complying with the requirements of La.R.S. 31:75. Accordingly, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed to the Appellants.

**AFFIRMED.**