2016-0134 (La.App. 1 Cir. 10/28/16)

**Breanne BOUQUET, Chris Bouquet, Individually, and on Behalf of their Minor Children, Ronnie Bouquet and Keira Bouquet**

v.

**Shaundrieka WILLIAMS, Bush Truck Leasing, Inc., Geico General Insurance Company, and Liberty Mutual Insurance Company**

**2016 CA 0134**

Court of Appeal of Louisiana, First Circuit.

OCTOBER 28, 2016

See also 2016 WL 6350854.

Andre' P. LaPlace, Baton Rouge, Louisiana, Attorney for Plaintiffs/Appellants, Breanne Bouquet et al.

Brent E. Kinchen, Benjamin H. Dampf, Baton Rouge, Louisiana, Attorneys for Defendant/Appellee, Subcontracting Concepts, Inc.

James R. Nieset, Jr., Kristopher M. Gould, Kelsey L. Jarrett, New Orleans, Louisiana, Attorneys for Defendants/Appellees, Hackbarth Delivery Service, Inc. and Travelers Indemnity Company of Connecticut

Shawn C. Collins, Rachel M. Roe, Baton Rouge, Louisiana, Attorneys for Defendant/Appellee, Liberty Mutual Fire Insurance Company

BEFORE: PETTIGREW, McDONALD, and DRAKE, JJ.

McDONALD, J.

$|_2$This case involves an automobile accident wherein a courier driver changing lanes forced a fellow motorist into a bridge guard rail. The injured motorist and her family filed a personal injury suit against the courier driver, the courier broker, and the delivery service for whom the courier was making a delivery. The trial court granted summary judgment in favor of the courier broker and the delivery service, denied partial summary judgment to the plaintiffs on the issue of insurance coverage, and dismissed the plaintiffs' suit. In this appeal, the plaintiffs appeal the judgment in favor of the courier broker. In a related appeal, 2016 CA 0135, the plaintiffs appeal the judgment granting the delivery service's motion for summary judgment and denying the plaintiffs' motion for partial summary judgment.[1] Here, we reverse the summary judgment in favor of the courier broker.

---

1. By order dated May 12, 2016, this court denied the Bouquets' motion to consolidate the appeals but ordered that they be assigned to the same appellate panel and docket.

## FACTUAL AND PROCEDURAL BACKGROUND

Hackbarth Delivery Services, Inc. is a carrier for hire in the business of arranging deliveries. Subcontracting Concepts, Inc. (SCI) is an entity that brokers courier and messenger services, manages transportation resources for delivery services, and furnishes administrative services for its customers. In 2003, Hackbarth and SCI executed an Assignment Agreement, whereby SCI would provide "independent contractors" to Hackbarth to complete Hackbarth's deliveries. In 2012, SCI and Shaundrieka Williams executed an Owner/Operator agreement, whereby Ms. Williams would be a courier driver. On April 3, 2013, Ms. Williams was driving her brother's vehicle eastbound over the Mississippi River Bridge from Port Allen to Baton Rouge, Louisiana, en route to make a delivery for Hackbarth. It is undisputed that, while changing lanes, Ms. Williams struck a vehicle being driven by Breanne Bouquet, who was also proceeding eastbound over the bridge on her way to work. Ms. Bouquet's vehicle was forced into the bridge guard rail and she was injured.

Ms. Bouquet and her husband, Chris Bouquet, individually and on behalf of their two minor children, filed this suit against Ms. Williams; her brother, Anthony Williams; ₃GEICO Casualty Company, her brother's automobile insurer; and Liberty Mutual Fire Insurance Company, the Bouquets' uninsured/underinsured motorist insurer. The Bouquets later settled their claims with the Williamses and GEICO and the suit was dismissed with prejudice as to these defendants.[2] The Bouquets amended their petition to add Hackbarth, SCI, and Travelers Indemnity Company of Connecticut, alleging that Hackbarth and SCI were Ms. Williams' employers, that Travelers was Hackbarth's automobile insurer, and that Hackbarth's Travelers policy provided coverage for Ms. Williams' acts. The defendants answered the Bouquets' petition, denying liability, and claiming that Ms. Williams was not a Hackbarth or SCI employee, but rather was an independent contractor of SCI, and further, that Hackbarth's Travelers policy did not provide coverage.

After discovery, the Bouquets filed a motion for partial summary judgment contending that, as a matter of law, the Travelers policy afforded coverage to a "leased worker," such as Ms. Williams, when she was involved in the accident while making a delivery for Hackbarth. Hackbarth and SCI then filed separate motions for summary judgment as to Ms. Williams' status as an employee/independent contractor. After a hearing, the trial court took the matter under advisement. On August 13, 2015, the trial court signed two judgments: (1) one judgment granted Hackbarth's motion for summary judgment, denied the Bouquets' motion for partial summary judgment, and dismissed the Bouquets' claims against Hackbarth and Travelers with prejudice; and (2) the other judgment granted SCI's motion for summary judgment and dismissed the Bouquets' suit.

In this appeal, the Bouquets challenge the trial court's summary judgment in favor of SCI. We address only their first assignment of error in this appeal because it relates to SCI. Their second assignment of error relates only to the judgment in favor of Hackbarth and Travelers and will be addressed in the related appeal under this court's docket number 2016 CA 0135.

**2.** Liberty Mutual later filed a cross claim against Hackbarth and SCI to recover UM coverage payments it made to the Bouquets—that cross claim is not at issue here. Also, the Bouquets' claims against Bush Truck Leasing, Inc., another originally named defendant, were ultimately dismissed without prejudice.

**236**

## ₄SUMMARY JUDGMENT AND EM-PLOYEE OR INDEPENDENT CONTRACTOR STATUS

■ The Bouquets contend the trial court erred in granting summary judgment to SCI, because there are genuine issues of material fact as to whether Ms. Williams was an independent contractor or employee of SCI.

A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA–C.C.P. art. 966(B)(2) and (C)(1).[3] The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. LSA–C.C.P. art. 966(A)(2).

The movant bears the burden of proving that he is entitled to summary judgment. However, if the movant will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent's claim, action, or defense. LSA–C.C.P. art. 966(C)(2). If the movant points out that this absence of factual support, then the non-moving party must produce factual support sufficient to satisfy his evidentiary burden at trial. LSA–C.C.P. art. 966(C)(2). If the non-moving party fails to make this requisite showing, there is no genuine issue of material fact, and summary judgment should be granted. LSA–

C.C.P. art. 966(C)(2); *Fonseca v. City Air of Louisiana, LLC*, 15–1848 (La.App. 1 Cir. 6/3/16), 196 So.3d 82, 86.

■ Under former LSA–C.C.P. art. 966(F)(2), a trial court could consider "[o]nly evidence admitted for purposes of the motion for summary judgment" in its ruling on the motion. But, in a case where cross motions for summary judgment were filed, the trial court was able to consider each party's motion ₅as an opposition to the other parties' motions and to consider all evidence offered on the cross motions. *See Smart v. Calhoun*, 49,943 (La.App. 2 Cir. 7/29/15), 174 So.3d 168, 172–73 (finding that former LSA–C.C.P. art. 966(F)(2) did not require a separate opposition pleading when the parties filed cross motions for summary judgment on the same issue). Here, the Bouquets, SCI, and Hackbarth each filed evidence into the record in support of their respective motions, and the record also contains Hackbarth's opposition to the Bouquets' motion. But, as the Bouquets point out on appeal, not all of the parties' opposition memoranda or supporting evidence is in the appellate record. As appellants, the Bouquets are charged with the responsibility of completeness of the record for appellate review, and the inadequacy of the record is imputable to them. *See Niemann v. Crosby Development Co., LLC*, 11–1337 (La. App. 1 Cir. 5/3112), 92 So.3d 1039, 1044. As an appellate court, we have no jurisdiction to review evidence that is not in the record on appeal, and we cannot receive new evidence. *Id.* So, in our review of the summary judgment here, we will consider each

---

**3.** The trial court signed the summary judgment on August 13, 2015, and it is therefore governed by the version of LSA–C.C.P. art. 966 in effect after its amendment by 2014 La. Acts No. 187. Although LSA–C.C.P. art. 966 was also later amended by 2015 La. Acts No. 422, the provisions of Act 422 do not apply to

any motion for summary judgment pending adjudication or appeal on the effective date of the act, January 1, 2016. *See* 2105 La. Acts No. 422, § 2; *Ciolino v. FirstGuar. Bank*, 15–0818 (La.App. 1 Cir. 4/15/16), 2016 WL 1535590 at*6, n.2 (unpublished). Therefore, we apply the former version of the statute.

properly filed motion, opposition, and evidence as support for each party's motion, and as opposition to their opponent's motion, but only as such properly appears in the appellate record.[4]

■ In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Fonseca*, 196 So.3d at 86. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. *Id.*

■■ Louisiana law governing the vicarious liability of an employer generally provides that employers are answerable for the damage occasioned by their employees in the |₆exercise of the functions in which they are employed. LSA–C.C. art. 2320. For an employer to be held liable for the actions of an employee under LSA–C.C. art. 2320, the plaintiff must show that an employer-employee relationship existed and that the employee's tortious act was committed within the scope and during the course of employment. *Fonseca*, 196 So.3d at 86–87. However, a well-established general rule under Louisiana law is that an employer is not liable for the torts committed by an individual who is an independent contractor in the course of performing his contractual duties. *Id.* In determining whether an employment or independent contractor relationship exists, the most important element to be considered is the right of control and supervision over an individual. *Id.*

■ The distinction between an employee and an independent contractor is a factual determination that must be decided on a case-by-case basis. *Tower Credit, Inc. v. Carpenter*, 01–2875 (La. 9/4/02), 825 So.2d 1125, 1129. In determining whether an independent contractor relationship exists, courts consider whether: (1) a valid contract exists between the parties; (2) the work is of an independent nature; (3) the contract allows for the work to be done according to the contractor's own methods, without being subject to control and direction, except as to the result of the services to be rendered; (4) a specific price for the overall undertaking is agreed upon; and (5) the duration of the work is for a specific time and not subject to termination at the will of either party. *See Hickman v. Southern Pacific Transport Company*, 262 La. 102, 117, 262 So.2d 385, 390–391 (1972); *Fonseca*, 196 So.3d at 87. In other words, to determine whether someone is an independent contractor, the court must look at the degree of control over the work. *Id.*

The following evidence of the relationship between Ms. Williams, SCI, and Hackbarth was before the court on the cross motions for summary judgment. Linder the 2003 Hackbarth/SCI Assignment Agreement, Hackbarth paid SCI to be "the primary provider of brokered transporta-

---

4. We note that, under the new summary judgment law enacted by 2015 La. Acts No. 422, LSA–C.C.P. art. 966(D)(2) provides the following regarding what evidence the trial court may consider on a motion for summary judgment:

The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objec-

tion is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider. We need not decide whether consideration of the summary judgment evidence in this case would be the same under the new law.

tion and vehicles, as well as independent contractors who provide such services ..." so that Hackbarth could complete deliveries for its customers. Scott Moller, Hackbarth's chief financial officer, testified in a deposition that Hackbarth advertised for courier drivers in Baton Rouge media; decided whether to hire [₇a particular courier driver; and, regularly forwarded Owner/Operator agreements signed by potential courier drivers to SCI. Mr. Moller explained that Hackbarth did not provide the vehicle, gas, or maintain the vehicle Ms. Williams used as a courier driver and did not have control over the route she chose to complete deliveries. He stated that Hackbarth drivers were paid by the job, were encouraged to work for other delivery companies at the same time they worked for Hackbarth, and were not required to wear Hackbarth apparel.

Robert Slack, SCI's chief operating officer, described SCI as a "back office administrator" or a "vendor payment company" who referred courier drivers to delivery companies and processed settlements. Mr. Slack confirmed that SCI was not a delivery service itself, did not direct courier drivers to accept or how to perform their deliveries, and that courier drivers were responsible for their equipment, necessary repairs, taxes, and insurance. Under the 2003 Hackbarth/SCI Assignment Agreement, SCI had the complete discretion to retain and recommend courier drivers to furnish services to Hackbarth as well as the complete discretion to terminate those same courier drivers.

The 2012 Owner/Operator agreement between SCI and Ms. Williams further described the nature of the parties' relationship. The Owner/Operator agreement contains the following terms, among others: the agreement did not create an employer/employee relationship between SCI and Ms. Williams; Ms. Williams had the discretion to accept or reject any delivery assignment from SCI's customers; Ms. Williams had the right to provide and utilize qualified licensed drivers to perform her delivery assignments; SCI had no control over Ms. Williams' pick-up or delivery methods; Ms. Williams was responsible for her own vehicle maintenance and her own automobile and liability insurance; she was also responsible for paying all expenses during her deliveries, such as tolls, fuel, garaging, and parking, as well as any applicable taxes; Ms. Williams was paid a negotiated fee for each completed delivery after she submitted completed paperwork and an invoice to SCI; and, the duration of the agreement was 90 days from its execution, was subject to renewal, and could be canceled at any time by SCI or Ms. Williams upon written notice.

[₈The Bouquets contend that summary judgment is not warranted in this case based on the Louisiana Supreme Court's reversal of this court in *Robicheaux v. Tate*, 12–0241 (La.App. 1 Cir. 12/21/12), 111 So.3d 401, *reversed*, 13–0176 (La. 4/1/13), 110 So.3d 134. The facts and legal history of *Robicheaux* are remarkably similar to this case and likewise involve Hackbarth, SCI, and a courier driver involved in an automobile accident while making a delivery for Hackbarth and while driving someone else's vehicle. In *Robicheaux*, the trial court granted summary judgment to Hackbarth and SCI, and dismissed Ms. Robicheaux's claims against them, finding that Hackbarth and SCI were not vicariously liable because the courier driver was an independent contractor. *Robicheaux*, 111 So.3d at 402. On appeal, this court reviewed the relationship between Hackbarth, SCI, the courier driver, and the vehicle owner. The relationship between Hackbarth and SCI was basically the same as here. *Id.* at 404. The Owner/Operator agreement between SCI and the courier driver contained virtually identical provi-

sions to the one between SCI and Ms. Williams. *Id.* at 404–05. The testimony of a prior Hackbarth chief financial officer was submitted, just as Mr. Moller's testimony was here, and contained even stronger factual details than Mr. Moller's testimony to support the independent nature of Hackbarth's courier drivers. *Id.* at 405. Further, unlike here, the *Robicheaux* court had the benefit of the courier driver's testimony and the vehicle owner's testimony, which only further supported a finding of their status as independent contractors. *Id.*

Based on the evidence before it, this court in *Robicheaux* found that it was "clear" that the courier driver and vehicle owner there were independent contractors. *Id.* And, in affirming summary judgment in favor of the defendants, this court noted that "[t]he control actually exercised by SCI/Hackbarth over [the courier driver and vehicle owner] was minimal, and clearly indicative of an independent contractor relationship, rather than an employer-employee relationship." *Id.* However, despite what appeared to be "clear" evidence, the Louisiana Supreme Court later granted Ms. Robicheaux's writ application, reversed and vacated the summary judgment, and remanded the case for further proceedings. *Robicheaux v. Tate*, 13–0176 (La. 4/1/13), 110 So.3d 134. The Supreme Court stated that "[g]enuine issues of material fact [remain[ed]" but gave no further explanation of what those issues were.

We are puzzled as to what material factual issues remained in *Robicheaux* so as to preclude a finding that the courier driver there was an independent contractor. And, we note that SCI does not attempt to distinguish *Robicheaux* on appeal. However, given that the evidence in the present case provides less support for Ms. Williams' independent contractor status than that in *Robicheaux*, we are constrained to reverse the summary judgment

here in favor of SCI and to remand this matter for further proceedings.

## CONCLUSION

For the above reasons, the August 13, 2015 judgment, granting Subcontracting Concepts, Inc.'s motion for summary judgment, and dismissing the claims of Breanne and Chris Bouquet, individually and on behalf of their two minor children, against Subcontracting Concepts, Inc., is reversed. This matter is remanded for further proceedings. Costs of this appeal are assessed to Subcontracting Concepts, Inc.

**REVERSED AND REMANDED.**