# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 22-532

**DAVID FAULKNER AND AMY FAULKNER**

**VERSUS**

**MEGAN ELIZABETH TYLER, ET AL.**

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 269572
HONORABLE PATRICIA KOCH, DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of Van H. Kyzar, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

**AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED.**

**William P. Worsley**
**Robert I. Siegel**
**Gieger, Laborde & Laperouse, L.L.C.**
**701 Poydras Street, Suite 4800**
**New Orleans, LA 70139**
**(504) 561-0400**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **National Union Fire Insurance Company of Pittsburgh, Pennsylvania**

**John Hoychick, Jr.**
**Cotton, Bolton, Hoychick & Doughty, L.L.P.**
**P. O. Box 857**
**Rayville, LA 71269**
**(318) 728-2051**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **David Faulkner**
    **Amy Faulkner**

**Tracy L. Oakley**
**P. O. Box 92807**
**Lafayette, LA 70509**
**(877) 323-8040**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Safeway Insurance Company of Louisiana**

**Jeffrey S. Ingram**
**2757 Hwy 28 East**
**Pineville, LA 71360**
**(318) 484-3911**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **State Farm Automobile Insurance Company**

**KYZAR, Judge.**

The defendant, National Union Fire Insurance Company of Pittsburg, Pennsylvania, appeals from a trial court judgment denying it summary judgment and granting summary judgment in favor of the plaintiffs, David and Amy Faulkner, on the issue of uninsured/underinsured motorist coverage. For the following reasons, we affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

On February 5, 2020, Mr. Faulkner, an employee of LaSalle Corrections Transport, L.L.C. (LaSalle Corrections), was traveling south on Louisiana Highway 28 (Highway 28) in Rapides Parish, while in the course and scope of his employment. The accident occurred when the van he was driving was struck by a vehicle driven by Megan Elizabeth Tyler, when she failed to stop at a stop sign located at the intersection of Louisiana Highway 3128 with Highway 28.

On December 7, 2020, the Faulkners filed suit seeking damages for the injuries and loss of consortium suffered by them as a result of the accident. Named as defendants were Ms. Tyler and her insurer, State Farm Auto Insurance Company, the Faulkners' insurer, Safeway Insurance Company of Louisiana (Safeway), and National Union Fire and Casualty Insurance Company of Pittsburgh, Pennsylvania (National Union), the insurer of LaSalle Management Company, L.L.C. (LaSalle Management).[1]

After answering the Faulkners' petition, National Union moved for summary judgment on the grounds that LaSalle Management had rejected uninsured/underinsured (UM) coverage in its original business auto policy, issued by Illinois National Insurance Company (Illinois National), an American

---

[1] The record contains no information regarding the connection between LaSalle Management and LaSalle Corrections.

International Group, Inc. (AIG) member company, on March 23, 2015. In support of its motion, National Union attached the affidavits of Erica Moon, an underwriter for AIG, and Ryan Horvath, LaSalle Management's director of legal affairs and risk management; a certified copy of LaSalle Management's original business auto policy, effective March 26, 2015; certified copies of its renewal policies, effective December 1, 2015, June 1, 2017, June 30, 2018, and June 30, 2019; its March 23, 2015 and November 24, 2015 rejection of UM coverage on the State of Louisiana UM bodily injury coverage form; and the Louisiana Department of Insurance's Bulletin No. 08-02 (Bulletin No. 08-02). In opposing National Union's motion, the Faulkners attached the following exhibits to their opposition: the affidavit of Erica Moon; certified extracts from LaSalle Management's original and renewal policies; LaSalle Management's March 23, 2015 and November 24, 2015 rejection of UM coverage; and Bulletin No. 08-02.

The Faulkners also filed a cross motion for summary judgment, arguing that they were entitled to judgment on the grounds that LaSalle Management's rejection of UM coverage was invalid as it failed to comply with Bulletin No. 08-02. In support of their motion, the Faulkners stated that they submitted "all exhibits attached to the Motion for Summary Judgment by National Union[,]" as well as Mr. Faulkner's affidavit and National Union's responses to discovery requests. In opposition to the Faulkners' motion, National Union attached a certificate from the Louisiana Secretary of State regarding the business filings of AIG Property Casualty Insurance Agency, Inc. (AIG Property).

Following a hearing on the cross motions, the trial court orally ruled that the UM coverage forms rejecting UM coverage on behalf of LaSalle Management were invalid. Written judgment denying National Union's motion and granting summary judgment in favor of the Faulkners was rendered on April 19, 2022. The judgment

2

was further certified as a final judgment. It is from this judgment that National Union moved for suspensive appeal.

On appeal, National Union asserts that the trial court erred in granting the Faulkners' motion and denying its motion on the validity of LaSalle Management's rejection of UM coverage.

**OPINION**

Summary judgment is a procedural device properly used when there is no genuine issue of material fact. *Murphy v. Savannah*, 18-991 (La. 5/8/19), 282 So.3d 1034; La.Code Civ.P. art. 966. A material fact is one that "potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (per curiam). "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 8 (La. 7/2/12), 94 So.3d 750, 755.

At the hearing on the summary-judgment motion, the burden of proof rests with the mover; however, if the mover will not bear the burden of proof at trial, he need only point out "the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La.Code Civ.P. art. 966(D)(1). Once this occurs, the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

Appellate courts review summary judgments *de novo* using the same criteria that governs the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the

3

movant is entitled to judgment as a matter of law. *Wright v. La. Power & Light*, 06-1181 (La. 3/9/07), 951 So.2d 1058; La.Code Civ.P. art. 966(A)(3).

In its recent opinion, *Berkley Assurance Co. v. Willis*, 21-1554, pp. 2-3 (La. 12/9/22), __ So.3d __, __ (alterations in original), the supreme court laid out the law pertaining to UM coverage:

> "UM Coverage is determined not only by contractual provisions, but also by applicable statutes." *Duncan* [*v. U.S.A.A. Ins. Co.*], 06-0363 [(La. 11/29/06)], p. 4, 950 So.2d [544,] 547. Thus, whether coverage exists turns on the interpretation of the policy and UM statute. Both are questions of law subject to *de novo* review. *Baack v. McIntosh*, 20-1054, p. 4 (La. 6/30/21), 333 So.3d 1206, 1211 (internal citations omitted). Similarly, appellate courts review the grant or denial of a motion for summary judgment *de novo* using the same criteria as trial courts. *Bernard v. Ellis*, 11-2377, p. 10 (La. 7/2/12), 111 So.3d 995, 1002.

> "No automobile liability insurance [policy] ... shall be delivered or issued in ... [Louisiana] unless [UM] coverage is provided." La. R.S. 22:1295(1)(a)(i). However, UM coverage is not required "if any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in [La. R.S. 22:1295(1)(a)(ii)]." *Id.* "Such rejection ... shall be made on a form prescribed by the commissioner of insurance" that is "provided by the insurer and signed by the named insured or his legal representative." La. R.S. 22:1295(1)(a)(ii). "The form signed by the named insured or his legal representative which initially rejects such coverage ... shall be conclusively presumed to become a part of the policy" and a "properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage." *Id.* As "[t]he requirement of UM coverage is an implied amendment to any automobile liability policy, "UM coverage will be read into the policy unless validly rejected." *Duncan*, 06-0363, p. 4, 950 So.2d at 547. It is well-settled that the UM statute is liberally construed and exceptions to coverage are interpreted strictly. *Id.*

With regard to the proper completion of the UM form, the supreme court held:

> The UM form dictates the requirements for a valid rejection or selection of lower limits of coverage. *See Duncan*, 06-0363, pp. 11-12, 950 So.2d at 551 (deriving the tasks required for rejecting coverage based on what the UM form entails); *Gingles* [*v. Dardenne*], 08-2995, p. 1 [(La. 3/13/09)], 4 So.3d [799,] 799 (observing "the pertinent UM rejection form did not expressly provide for the insurer's name"). Waiver of UM coverage "shall be made on a form prescribed by the commissioner of insurance" and only a "*properly completed* and signed

4

form creates a rebuttable presumption that the insured knowingly rejected coverage." La. R.S. 22:1295(1)(a)(ii) (emphasis added). "In directing the commissioner of insurance to prescribe a form, the legislature gave the commissioner the authority to determine what the form would require." *Duncan*, 06-0363, pp. 12-13, 950 So.2d at 552. "Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid." *Id.*, 06-0363, p. 14, 950 So.2d at 553.

The current UM form, prescribed under Bulletin 08-02, mandates the insurer's name, group name, or logo is necessary for a valid waiver of coverage. In relevant part, the form states: "If you wish to reject UMBI Coverage, select lower limits of UMBI Coverage, or select Economic-Only UMBI Coverage, you must complete the form and return it to your insurance agent or insurance company." Completion requires filling out the UM form in its entirety except where otherwise indicated on the face of the form. *See* La. C.C. art. 2047 ("words of a contract must be given their generally prevailing meaning"). Unlike the prior iteration of the UM form at issue in *Gingles*, a designated box in the current version of the form expressly provides for the entry of the insurer's name. *See Gingles*, 08-2995, p. 1, 4 So.3d at 799. Thus, Bulletin 08-02 made specific changes to the UM form by mandating the inclusion of the two boxes on the lower right corner of the form. As correctly noted by the court of appeal, while the descriptive "Optional" appears in the box provided for "Information for Policy Identification Purposes Only," no such language appears in the box provided for the insurer's name. [*Berkley Assurance Co. v.*] *Willis*, 20-0354, pp. 14-15 [(La.App. 4 Cir. 9/29/21)], 328 So.3d [567,] 576. What is not optional is mandatory. Berkley had the authority, opportunity, and responsibility to assure the UM form was properly completed. *Gray v. American Nat. Property & Cas. Co.*, 07-1670, pp. 14-15 (La. 2/26/08), 977 So.2d 839, 849-50; *see also Stone v. Allstate Property and Casualty Ins. Co.*, 18-0547 (La.App. 3 Cir. 3/7/19), 269 So.3d 961 (UM form valid where insured initially rejected coverage with a check mark but supplemented with initials upon request of insurer). It was not. A requirement mandated on the face of the UM form itself can never be hyper-technical nor its absence considered a minor deviation.

The tasks mandated by the current UM form, prescribed under Bulletin 08-02, are as follows: 1) initialing the selection or rejection of coverage chosen; 2) if limits lower than the policy limits are chosen, then filling in the amount of coverage selected for each person and each accident; 3) printing the name of the named insured or legal representative; 4) signing the name of the named insured or legal representative; 5) filling in the insurer's name, the group name, or the insurer's logo; and 6) filling in the date. Failure to properly complete the UM form results in an invalid rejection or selection of lower limits of UM coverage. *Duncan*, 06-0363, pp. 14-15, 950 So.2d at 553. Consequently, by operation of statute, UM coverage is equal to the

liability limits of the policy. *Id.*, 06-0363, p. 16, 950 So.2d at 554; La. R.S. 22:1295(1)(a)(i).

*Berkley Assurance*, __ So.3d at __ (alterations ours) (footnotes omitted).

### National Union's Motion for Summary Judgment

In accordance with the strict construction requirement applicable to coverage exclusions, National Union bears the burden of proving that "any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits." *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544, 547.

A review of the March 23, 2015 and November 24, 2015 UM forms executed in conjunction with LaSalle Management's March 26, 2015 and December 1, 2015 business auto policies establishes that it complied with the first, third, fourth, and sixth tasks required by Bulletin 08-02. On both forms, Mr. Horvath initialed the blank indicating rejection of UM coverage, printed and signed his name, and dated the form. The UM forms also contain the optional policy number, (948306 on the March 23, 2015 form, and CA 0948306 on the November 24, 2015 form). The only task at issue concerns the box pertaining to the identity of the insurer. As noted in Bulletin 08-02, the Insurance Commissioner stated that the box located in the lower right-hand corner of the revised UM form "must contain one of the following: the individual company name, the group name, or the insurer's logo." LaSalle Management's two UM rejection forms contain the pre-printed name "Chartis Insurance."

LaSalle Management's original policy, effective March 26, 2015, was issued by Illinois National Insurance Company and stated that it was purchased "from a member company of [AIG]." The second, renewal, policy issued to LaSalle Management, effective December 1, 2015, was issued by the Insurance Company of

6

the State of Pennsylvania. This policy also contains the information that it was purchased "from a member company of [AIG]." Renewal policies were also issued to LaSalle Management by National Union, effective June 1, 2017, June 30, 2018, and June 30, 2019 (the policy at issue), and all indicated that they were purchased from an AIG member company.

In her affidavit, Ms. Moon states that as an AIG underwriter, she has personal knowledge of the policies issued by AIG and its affiliated companies: AIG Property, Illinois National, the Insurance Company of the State of Pennsylvania (Insurance Company of Pennsylvania), and National Union. She further indicates that AIG Property was formerly known as Chartis Insurance (Chartis) and that Illinois National, the Insurance Company of Pennsylvania, and National Union were all AIG Property member companies.

As stated in *Berkley Assurance*, __ So.3d at __, "A requirement mandated on the face of the UM form itself can never be hyper-technical nor its absence considered a minor deviation." Based on the Insurance Commissioner's determination that a properly completed UM form must contain either the insurer's name, group name, or logo, we find that a genuine issue of material fact exists as to whether the UM forms executed on behalf of LaSalle Management were properly completed.

Although the UM forms contain Chartis's pre-printed name in the box reserved for the insurer's name, group name, or logo, none of LaSalle Management's policies indicate Chartis's status with regard to the issuing insurers. Rather, all of the policies indicate that the insurers are AIG member companies, rather than AIG Property member companies. Moreover, although Ms. Moon indicates that all of the insurers and AIG Property are affiliated with AIG and that the insurers are also AIG Property member companies, she has presented no evidence indicating the

7

actual relationship of Chartis to AIG or even when and under what circumstances Chartis ceased to be known by that name and began using AIG Property, if indeed it did so. Accordingly, we find that the existence of a genuine issue of material fact precludes the grant of summary judgment in favor of National Union. Accordingly, the judgment denying National Union's motion for summary judgment is affirmed.

## *The Faulkners' Motion for Summary Judgment*

As the Faulkners will not bear the burden of proof at the trial on the merits on the issue of LaSalle Management's rejection of UM coverage, they are only required to "point out to the trial court the absence of factual support for one or more elements essential to" National Union's claim that LaSalle Management properly rejected UM coverage. La.Code Civ.P. art. 966(D)(1). If they are successful in doing so, the burden would then shift to National Union "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the" Faulkners are "not entitled to judgment as a matter of law." *Id.*

In support of their motion, the Faulkners stated that they were submitting "all exhibits attached to the Motion for Summary Judgment by National Union[,] as well as Mr. Faulkner's affidavit and National Union's responses to interrogatories propounded by Safeway, which included the motor vehicle accident report.

In *Huggins v. Amtrust Insurance Co. of Kansas, Inc.*, 20-516, p. 5 (La.App. 1 Cir. 12/30/20), 319 So.3d 362, 366, the first circuit, in performing a *de novo* review on the grant of summary judgment in favor of the plaintiffs, held:

> The trial court, and this court, on *de novo* review, may only consider evidence that is admissible under the express provisions of La. C.C.P. Arts. 966-67. *Horrell v. Alltmont*, 19-0945 (La. App. 1 Cir. 7/31/20), 309 So.2d 754, 761-62. We may consider *only those documents filed in support of or in opposition to the motion for summary judgment* and shall consider any documents to which no objection is made. La. C.C.P. Art. 966D(2) (emphasis added). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to

8

interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. Art. 966A(4).

Although the Faulkners' and National Union's motions were heard at the same time, the only evidence that the trial court was allowed to consider with regard to the Faulkners' motion were those exhibits filed in conjunction with their motion. As the *Huggins* court noted:

> We recognize the duplicative nature of requiring the Hugginses to include their own copies of the USAA and Technology policies in the record, when the very same policies already appear in the record, albeit, attached to their opponent's cross motion for summary judgment. Under prior summary judgment law, in a case where cross motions for summary judgment were filed, the district court was able to consider each party's motion as an opposition to the other party's motion and to consider all evidence offered on the cross motions. *See Bouquet v. Williams*, 16-0134 (La. App. 1 Cir. 10/28/16), 206 So.3d 232, 236-37; *also see Smart v. Calhoun*, 49,943 (La. App. 2 Cir. 7/29/15), 174 So.3d 168, 172-73 (finding that former La. C.C.P. Art. 966F(2) did not require a separate opposition pleading when the parties filed cross motions for summary judgment on the same issue). However, under current La. C.C.P. Art. 966D(2), in reviewing the grant of summary judgment to the Hugginses, we may consider only those documents specifically filed in support of or in opposition to the Hugginses' motion for summary judgment.

*Id.* at 367.

Thus, although the Faulkners attempted to submit National Union's exhibits in support of their own motion, the only exhibits that we may consider are those that were actually attached to their motion.

In his affidavit, Mr. Faulkner stated that he was driving a van owned by his employer, LaSalle Corrections, at the time of his accident, that he was driving in a safe and proper manner when he was struck by Ms. Tyler's vehicle, and that Ms. Tyler's policy limits were insufficient to cover the amount of his damages. The accident report attached to National Union's responses to interrogatories establishes that Mr. Faulkner was driving a 2020 Chevrolet van owned by LaSalle Corrections,

which was insured by National Union (Policy Number CA 4257175). It further establishes that Ms. Tyler's vehicle was insured by State Farm.

After reviewing this evidence, we find that the Faulkners failed to present evidence pointing out the absence of factual support for National Union's claim that LaSalle Management properly rejected UM coverage. Thus, the burden never shifted to National Union to establish the existence of a genuine issue of material fact or that the Faulkners were entitled to judgment as a matter of law. Accordingly, the trial court's grant of summary judgment in favor of the Faulkners is reversed, and the matter is remanded to the trial court for further proceedings.

## DECREE

For the foregoing reasons, the judgment of the trial court denying summary judgment in favor of National Union Fire Insurance Company of Pittsburg, Pennsylvania is affirmed; the judgment granting summary judgment in favor of David and Amy Faulkner is reversed; and the matter is remanded for further proceedings. The costs of this appeal are assessed equally between the parties.

## AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.